## FLEMING & BOWLES *v.* KING.

1. The refusal of a landlord to sign a written contract of lease and the return of the same to the tenant without so doing, with a statement to the effect that there was no necessity for signing it, cannot be treated as an acquiescence upon the landlord's part in any stipulation set forth in the paper.
2. A local custom prevailing in a city cannot have the effect of depriving a contracting party of rights secured to him by a positive statute, unless he expressly so agrees.
3. The tenant of a rented house is liable for the stipulated rent to the end of his term, although the house, before the expiration of such term, be destroyed by fire, unless the landlord does acts which in law amount to an eviction of the tenant.
4. Erecting an inclosure around the rented premises and pulling down the walls of the burned building, these things being done by the landlord under orders of the municipal authorities, for the purpose of insuring safety to the public, are not such acts.
5. Merely entering upon the premises without the tenant's express consent, and having bricks cleaned, does not amount to an eviction of the tenant, it appearing that, though aware that this work was being done, he made no objection to the same.
6. The charges complained of were not erroneous; the verdict was in accordance with the law and the evidence, and the motion for a new trial was therefore properly overruled.

Argued January 25,—Decided March 8, 1897.

Complaint on account.   Before Judge Callaway.   Richmond superior court.   April term, 1896.

*Fleming & Alexander*, for plaintiffs in error.

*Joseph B. & Bryan Cumming*, contra.

FISH, Justice.

King rented to Fleming & Bowles a storehouse in the city of Augusta, for one year beginning Oct. 1st, 1890, with privilege of three years, at $2,500 per annum. Soon after Fleming & Bowles went into possession, Craig, King's agent, called on them for rent notes. They declined to give them, unless King would sign a rent contract which they had drawn up and signed, containing a fire clause—that is to say, a clause protecting the tenants against liability for future rent in the event the storehouse should be destroyed by fire. Craig submitted this proposed contract to King, who without signing it returned it to Fleming & Bowles, with the message, as Craig testified, that he (King) and Mr. Bowles had had interviews and written enough and he didn't care to sign it—Bowles testifying that Mr. Craig said, "that Mr. King said that he did not see any use in signing it, that he had no contract with any other of his tenants." Near the end of the second year, to wit, Aug. 26th, 1892, the storehouse and contents were entirely destroyed by fire. Fleming & Bowles at once opened a store at another place. (The rent was regularly paid, early in each month for the previous month.) On the day of the fire King had a fence built around the premises, and, two days afterwards, he had the walls pulled down, which was all done by order of the fire wardens of the city, to insure safety to the public. Soon after the walls were pulled down, King began to have the bricks cleaned. Fleming & Bowles did not give King any permission to build the fence, pull down the walls, or to clean the brick, nor did they make any objection when they saw the work being done. They paid the rent to Aug. 26th, 1892, the date of the fire, but refused to pay any rent after the fire. King sued them for $241.93, for rent from Aug. 26th, 1892, to Sept. 30th, 1892, inclusive. They pleaded, sub-

stantially, (1) that the written instrument of lease, pre-
sented by them to the plaintiff for execution, to the terms of
which there was no objection, contained a fire clause, and
that King was fully notified of what they understood the
contract to be, and that he was bound in law by that under-
standing; (2) that there was a local custom in Augusta to
the effect· that tenants were not required to pay rent for
buildings after destruction by fire; (3) that King's use and
occupation of the premises, in building the fence, pulling
down the walls and cleaning off the brick, amounted in law
to an eviction. There was a verdict in favor of King for the
amount sued for, with interest. Fleming & Bowles moved
for a new trial, which was refused, and they excepted. The
grounds of the motion to be considered were, (1) that the
evidence showed such conduct on the part of King as
amounted in law to acquiescence in, or an acceptance of
the terms of the written lease presented to him by Fleming
& Bowles; (2) that the court erred in refusing to allow proof
of the existence of a local custom in Augusta, to the effect
that tenants are not expected or required to pay rent for
buildings after they have been destroyed by fire; and (3)
that the evidence showed such use and occupation of the
premises by King as amounted to an eviction.

1. After Fleming & Bowles had agreed to rent the store-
house for one year, with the privilege of three years, at
$2,500 per annum, and after they had gone into possession
under such contract, they submitted to King, for his signa-
ture, an instrument containing a clause releasing them from
the payment of future rent, in the event the house should be
burned. The plaintiff never signed the instrument, but re-
turned it to the defendants with the message, "that he and
Mr. Bowles had had interviews and written enough, and he
didn't care to sign it," or "that he did not see any use in
signing it, that he had no contract with any other of his ten-
ants." Plaintiffs in error contend that this amounted to an
acquiescence, in law, on the part of King in the terms of the

instrument, because he made no objection to signing it on account of the fire clause, but simply said, in substance, that there was no necessity for signing it.    It seems very clear to us that the return of the written contract of lease by King to his tenants, with a statement to the effect that there was no necessity for signing it, instead of implying an accept-ance of its terms by him, very forcibly indicated a refusal on his part to agree to release the tenants from future rent in case the storehouse should be destroyed by fire; and he was not bound by any of the stipulations in the proposed con-tract which he refused to execute.

2. The court below did not err in refusing to allow plain-tiffs in error to prove the existence of a local custom in the city of Augusta, to the effect that tenants are not expected or required to pay rent for buildings after they have been destroyed by fire.    A custom makes the law of a contract only where there is no law governing it; it does not super-sede the law.    A local custom cannot have the effect of de-priving a contracting party of rights secured to him by a positive statute, unless he expressly so agrees.    There was no agreement that a custom should enter into the rent con-tract in this case; the tenants did not rely on it, but sought to make an express written agreement on the subject, to which the landlord refused to assent, showing thereby that instead of contracting with reference to the custom he re-pudiated it.

3. The law is well settled in Georgia, that the tenant of a rented house is liable for the stipulated rent to the end of his term, although the house, before the expiration of such term, be destroyed by fire, unless the landlord does some act which in law amounts to an eviction of the tenant.    Civil Code, §3135.

4. The erection of the enclosure around the rented prem-ises and the pulling down of the walls after the burning of the building, these things being done by the landlord under the orders of the fire wardens of the city of Augusta, for

the purpose of insuring safety to the public, were not such acts as amounted in law to an eviction of the tenants. To constitute an eviction which will operate as a suspension of rent there must be either an actual expulsion of the tenant, or some act of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises. Upton v. Townsend, 84 Eng. C. L. 30. The erection of the enclosure and the pulling down of the walls were not done with the intention of interfering with the possession of the tenants or of depriving them of the beneficial use of any portion of the rented premises. The landlord was simply complying with the orders of the municipal authorities, to avoid serious danger to those passing near the cellar walls. Even without such orders it would have been the duty of the landlord to have the cellar and walls, which were in dangerous proximity to a public street, put in such condition as would have afforded reasonable immunity against the danger which might otherwise probably have resulted from their existence; and such being his evident purpose, the enclosure of the cellar and tearing down of the walls of the burned building did not constitute an eviction.

5. Nor did the mere entry upon the premises without the tenant's express consent, and having the brick of the burned house cleaned, amount to an eviction, it appearing that the tenants, although aware that this was being done, made no objection to the same. These acts of the landlord were not such an impairment of the beneficial enjoyment of the rented premises by the tenants, or such a disturbance of their possession, as to constitute an eviction. Even if the landlord had no right to enter and have the bricks cleaned, his doing so amounted only to a trespass, as he evidently had no intention to interfere with any substantial enjoyment of the premises by the tenants; and it is well settled that it requires something more than a mere trespass to constitute an eviction. Were it otherwise, the landlord would forfeit his rents by

the most trivial acts of trespass, and leave his tenant in the unimpaired enjoyment of the premises for the term. The evidence in the case strongly indicates that the tenants only rented the *storehouse* from the landlord, and, in that case, when it was burned their whole interest in the property was gone, and the landlord had the right to re-enter, not only for the purpose of enclosing the cellar, pulling down the walls and cleaning the brick, but for the purpose of rebuilding, without being guilty of an eviction. *Alexander* v. *Dorsey*, 12 *Ga.* 12; *Pope* v. *Garrard*, 39 *Ga.* 471.

6. The charges complained of, substantially agreeing with the rulings herein made, were not erroneous; the verdict was in accordance with the law and the evidence, and the motion for a new trial was therefore properly overruled.

*Judgment affirmed. All the Justices concurring.*