20908. SETTELMAYER v. HARTSFIELD, Mayor, *et al.*

ARGUED JUNE 14, 1960—DECIDED JULY 7, 1960—REHEARING DENIED JULY 19, 1960 AND JULY 25, 1960.

*Houston White,* for plaintiff in error.

*Edwin L. Sterne, Hamilton Lokey, J. C. Savage, Robert F. Lyle, Henry L. Bowden,* contra.

MOBLEY, Justice. 1. While many issues are raised by the petition, consisting of eighty-seven pages, and by the demurrers,

consisting of nineteen pages, the issue of whether the petitioner was ever elected to the office which he now holds, by the Board of Aldermen, and whether he is now serving a four-year term expiring as he contends, December 31, 1960, is controlling.

The petition sets forth all acts of the legislature and all city ordinances alleged to have to do with the establishment and operation of the Atlanta Public Library, and sets out a history of the library, which is briefly as follows: The Young Men's Library Association of the City of Atlanta was organized in 1867, and thereafter began the operation of a library. On May 9, 1899, the Young Men's Library Association and the City of Atlanta entered into a contract whereby the association turned over its library and property to the city. The contract recited that Andrew Carnegie had agreed to give $100,000 for a building, provided the city would appropriate $5,000 per year for its operation; and the contract provided that the city should obtain legislation requiring it to appropriate $5,000 annually for the library. It provided that the library should be operated by a Board of Trustees of twelve men appointed by the city, six of whom would be nominated by the Young Men's Library Association; and it further provided that, at the end of six years, if the conditions of the contract had been performed, the reversionary rights of the Young Men's Library Association and their right to nominate six trustees would cease, and that the property and control would then vest in the city. In June 1905, an ordinance was adopted by the City of Atlanta reciting that the contract of 1899 between the city and the Young Men's Library Association had expired; that the city thereby took possession of the Carnegie Library, and assumed management and control thereof; and that management of same was vested in a Board of Trustees. Composition of the board was fixed, and the manner of election, terms, etc., was prescribed. The library has since been operated by a Board of Trustees appointed by the Board of Aldermen.

The petition alleges that the act providing that the Mayor and Council of Atlanta shall have full power and authority to pass all bylaws and ordinances respecting public buildings (Ga. L. 1874, pp. 116, 119) is the original source of all legislative

authority vested in the Mayor and Board of Aldermen with respect to the establishment, support, maintenance, and operation of the Carnegie Library, now known as the Atlanta Public Library. A charter amendment of December 20, 1899, required the city to appropriate annually $5,000 for the support of the library (Ga. L. 1899, p. 127); but the petitioner claims this did not amplify the authority given in 1874.

In 1901, the legislature by a general law (Ga. L. 1901, p. 52; Code § 32-2701) provided that any city might tax and appropriate money for the operation and maintenance of libraries. The act made it mandatory that the funds be expended by and under direction of the board of trustees of the public schools, or other authority controlling the public schools, which, by the act of 1904, was changed to the board of trustees elected by the city council. Ga. L. 1904, p. 90 (Code § 32-2701). Section 4 of the act of 1904 provided that the board of trustees should have supervision of the library, pass rules and regulations for its operation, elect a librarian, or designate someone to perform the duties of librarian, and should appoint and discharge said officer at pleasure.

The petitioner alleges that the act of 1901, as amended by the act of 1904, has no application to the Atlanta Public Library, but that its Board of Trustees was established by authority of the act of 1874 and the general law of 1892, which authorized the city to accept gifts of property and to act as trustee of said property (Ga. L. 1892, p. 104; Code § 69-501), and from later ordinances and a course of conduct indicating that the library was not being operated under the acts of 1901 and 1904.

The petitioner then alleged that, prior to May 10, 1949, the head of the department of the Atlanta Public Library was the librarian and that on that date the personnel board of the City of Atlanta recommended the creation of the position of office of Director of Public Libraries at a salary of $7,500 per year; that on May 11, 1949, the defendant Board of Trustees approved the creation of the new position and salary; that on May 16, 1949, the Board of Aldermen adopted an ordinance creating the position at said salary, and directed that he be paid by the city comptroller; that no ordinance, resolution, or other action of the

defendant Board of Aldermen was taken expressly naming, electing, or appointing the petitioner to the office of Director of Public Libraries of Atlanta; that no resolution, motion, or other action expressly electing or appointing the petitioner Director of Public Libraries of Atlanta was ever passed or approved by the defendant Board of Trustees and spread upon its minutes; that on May 17, 1949, the defendant Board of Trustees approved a motion to invite Mr. Settelmayer to become Director of Libraries of Atlanta, and directed the president of the board to communicate with him and to ascertain whether or not he would accept the position at the salary of $7,500; that the president of the board did call the petitioner, who agreed to take the office on July 1, 1949, and who, on that date, was sworn in and took possession of the office and has continued to serve in that office ever since; that since that date the petitioner has been recognized as the Director of Public Libraries of Atlanta and as head of the department of the Atlanta Public Library in numerous ways; that in 1939 an amendment to the charter of the City of Atlanta provided that the heads of all departments of the city whose terms would expire on the first Monday in January 1940 were extended one year, and at the expiration of that date terms of all officers, as then fixed by the charter, would be fixed at four years. Then the petitioner alleges, "that, by virtue of the foregoing facts in the light of the foregoing charter provisions, petitioner was elected in fact to the office of Director of Public Libraries of Atlanta, and as the head of the department of the Atlanta Public Library, by defendant Board of Aldermen for the balance of the four-year term expiring December 31, 1952."

These allegations alone or combined with any other allegations in the petition do not allege facts showing that Settelmayer has ever been elected Director of Public Libraries by the Board of Aldermen, or that he has ever been elected for any fixed term. Furthermore, there is no merit in the petitioner's contention that only the Mayor and Board of Aldermen can remove the Director of Libraries. The act of February 26, 1941 (Ga. L. 1941, p. 1053), provides that the Mayor and Board of Aldermen of the City of Atlanta have sole authority "to declare any office whether legislative, executive, judicial, or administrative,

vacant for breach of duty . . ." Clearly, he is not a legislative, executive, or judicial officer. The act provides that "The term 'administrative' wherever used in this act shall mean department heads and not subordinate officers." There is no ordinance or other law declaring the petitioner a department head; but, on the contrary, the only act designating department heads of the City of Atlanta (Ga. L. 1951, p. 3062) does not include the Director of Libraries. In addition, section 17.1 of the city charter provides that the department heads shall "be elected by a majority vote of the Board of Aldermen upon nominations by the Mayor." It is not alleged that Settelmayer has ever been nominated by the Mayor for the office of Director of Libraries, or has ever been elected by the Board of Aldermen. Just the opposite is alleged, since the facts alleged show that he was elected by the Board of Trustees.

2. The petition, likewise, sets out no cause of action against the Board of Trustees.

As shown in division 1, the library was operated under a contract between the Young Men's Library Association and the City of Atlanta from 1899 to 1905 by a Board of Trustees, six of whom were nominated by the Young Men's Library Association. At the expiration of the contract, the library property vested in the City of Atlanta and the city took possession thereof and has since operated it under a Board of Trustees.

During the operation of the contract, a general law was passed in 1901 and amended in 1904, authorizing cities to establish and operate libraries, but requiring that same be operated under a board of trustees, which would hire and fire at pleasure a librarian and other employees.

In our opinion, the act of 1901, as amended in 1904, makes it mandatory that all libraries operated by cities be operated in accordance with its terms. While the establishment and operation of a public library by a city is permissive, a city having once established and undertaken the operation of a library must operate it in accordance with the requirements of that general law. See *Vason v. City of Augusta*, 38 Ga. 542, 545. The petitioner contends that the city has the right to elect whether it will operate under the general law and agrees that, if it makes

that election, it must comply with its terms. There is nothing in the act giving the city the right of such election. In fact, the provision of the 1901 act apparently was passed to assure that the contract then existing between the City of Atlanta and the Young Men's Library Association under which the city obligated itself to appropriate at least $5,000 per year for support of the library should be binding upon the Mayor and Council of Atlanta and their successors in office, for it provides: "The municipal government of any such city shall have authority to enter into a legal and binding agreement to accept and receive any donation offered by any person or persons on such terms as may be agreed upon between said person or persons and said municipal government, and such agreement so made shall be legal and binding upon said municipal government and its successors; and all agreements by said municipal government of said city to pay any sum or sums of money annually thereafter for the use of said public library shall be legal and binding on the said city; and any ordinance or ordinances carrying said agreement into effect shall have the force and effect of law and be binding on the said city during the time mentioned in said agreement and said ordinance."

The Atlanta Public Library has been operated by a Board of Trustees appointed by the Mayor and Board of Aldermen since the property vested in the city in 1905, the date of the expiration of the contract with the Young Men's Library Association. The fact that there may not have been strict compliance with the provisions of the 1901 and 1904 acts as to operation of the library would in no way relieve the city from the requirements of those acts. No custom, acts, or courses of conduct could nullify the general law as to operation of the Atlanta Library. See *Fleming & Bowles v. King,* 100 Ga. 449 (2) (28 S. E. 239), and *Deadwyler & Co. v. Karow & Forrer,* 131 Ga. 227 (2) (62 S. E. 172, 19 L. R. A. (NS) 197). "A mere custom cannot change the force of positive law." *Morris Plan Bank of Ga. v. Simmons,* 201 Ga. 157, 172 (39 S. E. 2d 166).

The general law of the State applies to the operation of the Atlanta Public Library, and the Board of Trustees was authorized to discharge the petitioner, upon giving thirty days' notice as provided in its bylaws.

3. The trial court properly sustained the general demurrers and dismissed the petition.

*Judgment affirmed. All the justices concur, except Duckworth, C. J., and Head, P. J., who dissent.*

DUCKWORTH, Chief Justice, dissenting. The majority is in my opinion wrong for two solid reasons, either of which demands a judgment of reversal. These reasons are: (1) the Atlanta Library was in existence and full operation before the 1901 Act (Ga. L. 1901, p. 52; Code, Ann., Ch. 32-27) was enacted; and (2) if it is completely under the 1901 act as amended in 1904 (Ga. L. 1904, p. 90), there is no authority in those acts for the action of the trustees here complained of. The utter failure of the majority to comprehend the law under which the library was established is in part shown by their assertion that it was in 1905, after the enactment of the general laws, that the city took ownership thereof, yet in the record which was in front of them there is a deed dated May 9, 1899, whereby the Young Men's Library Association conveyed to the City of Atlanta lands, building, fixtures, furniture, books, and securities then owned and in use as a library, and valued at $96,500, on condition that they be used for public library purposes. Paragraph 6 of the conveyance provides that, if the city fails to fulfill all the conditions therein, "the whole property . . . or the proceeds therefrom, *should such property be sold,* shall revert for the same uses" to the grantor. In the face of this conveyance, it is not correct to deny the city's ownership in 1899. By an ordinance adopted April 6, 1908, it is provided in section 3 thereof "that the Trustees elected hereunder shall have all the powers of the Trustees under prior ordinances, and their orders shall be carried out, subject to such further ordinances as may be passed by the General Council." Here is concrete indisputable proof that powers of these trustees were conferred by city ordinance, and were subject to any later ordinance change. This fact can not be reconciled with the provision of the general law whereby the trustees are given by that law power to exercise supervision of said public library and to elect a librarian and an assistant or designate some officer to perform the duties of a librarian, and to discharge them. These cold facts conclusively show that

the library was operated by the city independently of the general law and without any intention to operate under that general law. While charter provisions, which need not be here cited, abundantly authorized the city to so operate, yet, even if the operation is unauthorized, this could not mean that the trustees would derive any authority from the general law; hence they were without any authority whatever to interfere with the petitioner, and his petition seeking to enjoin such interference stated grounds for the relief sought.

But if this array of facts be ignored entirely as the majority has done, and considering the case as the majority has done, by holding that the library is operated exclusively under the general law of 1901, as amended in 1904, we find a total absence of any provision of that law which authorizes the trustees to discharge or interfere with the petitioner in his office of "Director of Public Libraries," which office was created by a city ordinance on May 16, 1949, which was after the library had been operated without such an office for more than half a century. That ordinance also provided for a salary to such officer of $7,500 per year and directed that he be paid, but not by the trustees as the general law requires. The general law, both the original act of 1901 and as amended in 1904, authorized the trustees therein referred to to employ and discharge at pleasure a librarian, assistant librarian, or other officer they might name to perform the duties of librarian. None of such employees is "Director of Public Libraries," and hence the law does not authorize the trustees to appoint or discharge one holding that position. There is simply no authority in the general law for the trustees to discharge this "Director of Public Libraries" or anyone else save those named therein. I would emphasize that this office expressly embraces more than one library as it says "Libraries." The general law refers to one library and hence to the librarian and assistant librarian therein.

Thus we come to the pleaded fact that petitioner was and had been in possession of the office of Director of Public Libraries since July 1, 1949, and had been recognized as the rightful possessor thereof by the trustees and the city. It is begging the question and diverting attention from all relevant

facts to discuss whether or not he had been properly employed. We need not even consider here whether or not he was a head of department as defined by city ordinances, since it is sufficient for a decision here to see only that he was a city employee, being paid by the city, and his employment has been interfered with by the trustees without authority. The city alone has the right to discharge him. I would therefore hold that the petition alleges facts that authorize the relief sought, to wit, that the order of the trustees purporting to discharge the petitioner be held void and that the trustees be enjoined from interfering with petitioner's possession of his office as Director of Public Libraries; and the court erred in sustaining the demurrer and dismissing the petition.

I am authorized by Mr. Presiding Justice Head to say that he concurs in this dissent.