61697. COLLINS v. ECONOMIC OPPORTUNITY ATLANTA, INC.

BIRDSONG, Judge.

The appellant, George Steven Collins as landlord, brought an action against the appellee, as his tenant, for unpaid rent and damages to the building rented. The jury returned a verdict in favor of the tenant, and the landlord appeals, enumerating seven errors below. *Held:*

1. Appellant sued for breach of the contract to lease, occasioned when the tenant abandoned the premises, and the tenant affirmatively defended by saying it had been constructively evicted. The evidence showed that in June, 1976, the tenant leased appellant's 70-year-old building for use as a halfway house or rehabilitation treatment residence. The evidence supported a finding that from June, 1976 until January, 1978, when the tenant vacated the premises, the tenant had performed substantial repairs and renovations, not as a departure from the contract terms but rather, at first, because the lessor could not obtain reliable workers to complete the work necessary to enable the tenant to timely comply with governmental support grants, and later because the tenant could never get the landlord to perform necessary repairs. There was substantial and undisputed evidence that the tenant's employees repeatedly attempted to call the landlord's agent at his office, made visits to his office a block away, and wrote certified and registered letters to the agent. The phone calls were not returned or answered, the office door would be locked, and the letters were generally returned undeliverable. The landlord's agent admitted that he had no answering service, and that he never responded to any of the letters written by the tenant.

Apparently the worst problem was the furnace which was an ancient, "humongous Cyclopean kind of boiler" that constantly broke down. In the first winter season of residence, in January, 1977, the tenant wrote the landlord: "I am writing . . . due to the fact that I have received no responses in reference to other attempts to contact you. . . . It was recommended to you [in September] that the heating system be converted from oil to gas. You . . . agreed to have the conversion made at your expense. . . . [I]t should be your

responsibility, as provided in the lease, to provide adequate heating service for the facility. Obviously, due to the age of the current system, maintenance is required quite frequently." The landlord never responded to this letter. The tenant continued to perform the necessary repairs itself. A few days before Christmas, 1977, the furnace blew up, or behaved in some similarly unattractive manner. Twenty-seven drug dependent residents were moved in and near the kitchen so they could be kept warm by the use of fans blowing away from the kitchen stove. The administrator reached the landlord's agent at his home and told him that something would have to be done immediately and that the residents could not stay there otherwise. There was evidence the furnace would have to be replaced. Finally, the decision was made to transfer the residents to other locations temporarily, but when the problem was not taken care of, the decision became permanent. On January 6th or 9th the tenant officially abandoned the building, and on January 10th, so notified the landlord in writing. The tenant had secured and locked the doors and windows as well as possible and left lights on to indicate occupancy; nevertheless, by the time the landlord finally arrived in February, the place was in shambles.

The jury was authorized to conclude that the landlord was contractually obligated to repair and that the tenant had not waived the landlord's contractual obligation as a matter of fact; that the tenant had been constructively evicted because "(1) ... the landlord in consequence of his failure to keep the premises repaired allowed it to deteriorate to an extent that it had become an unfit place for the defendant to carry on the business for which it was rented; and (2) that the premises could not be restored to a fit condition by ordinary repairs which could be made without unreasonable interruption of the tenant's business. *Overstreet v. Rhodes,* 212 Ga. 521 (93 SE2d 715)." *Alston v. Georgia Credit Counsel,* 140 Ga. App. 784, 785 (232 SE2d 134). The conclusion was authorized either that the tenant had given reasonable notice of its intention to vacate as required by the lease or that such notice was impossible or could not reasonably be given through no fault of the tenant; and, further, that any damages to the property were not the fault of the tenant. The trial court therefore did not err in refusing to direct a verdict for the landlord (see Code Ann. § 81A-150 (a)), nor was the verdict contrary to the evidence or the law.

2. The charge that the landlord had the burden to prove breach of contract was not error or prejudicially misleading because the trial court fully and properly charged (see *Alston,* supra) that the further burden to prove constructive eviction rested on the tenant.

Notwithstanding any further remarks in *Alston,* supra, there is no requirement in the usual case that the tenant show there was "some act of a grave and permanent character done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises"; where such a showing was required, in *Fleming & Bowles v. King,* 100 Ga. 449 (28 SE 239), the landlord had actually erected a fence around the tenant's store building when ordered to do so by the fire marshal.

The charge that vague, equivocal or self-contradictory testimony "of a party who offers himself as a witness in his own behalf" was not prejudicial or misleading as tending (by the use of personal pronouns) to focus upon the landlord individually, particularly since the trial judge instructed the jury to consider the defendant corporation as a person in this instance and that the case was to be considered "as a lawsuit between persons of equal worth and equal standing. . . ."

The charge that where good faith requires an answer to a letter, a party is presumed to admit the propriety of acts mentioned in a letter to him when he fails to answer the letter, and that such presumption is rebuttable, is a correct principle of law and was supported by the evidence. Appellant contends the letters were admitted for the limited purpose of showing difficulty in contacting the landlord, and could not suddenly become presumptive evidence of any statement contained in them; and that the letters were totally immaterial to the furnace failure in December, 1977. These contentions are without merit. The repeated notice to the landlord of the furnace defects and particularly of the tenant's position that the landlord was obligated to fix the furnace (and in fact had promised to do so) were highly relevant to the question of constructive eviction and to the question of who was in fact obligated for the repair.

3. The charge that the landlord must ordinarily turn over rented property in a condition reasonably safe and suited for the intended use and free of such latent defects as the exercise of ordinary diligence on the part of the landlord might have disclosed, is alleged to be inappropriate and prejudicially misleading in view of the tenant's contractual acceptance of the property "as is" and "as suited for the uses intended by the tenant." This charge, even if inappropriate, does not require a reversal. Acceptance by the tenant of property "as is" does not assuage the duty upon every landlord to transfer property free of latent defects and in as reasonably safe and suitable condition as it appears to be, and as the tenant in fact accepts it. In any case, the jury was made well aware that the true issues in dispute were whether the landlord was obligated to repair the

furnace, whether the landlord constructively evicted the tenant, and whether the tenant gave proper notice of intent to vacate, and considering the evidence, we think it highly probable the verdict was not the product of a misleading instruction. See *General GMC Trucks v. Crockett,* 145 Ga. App. 503, 505 (244 SE2d. 78).

*Judgment affirmed. Shulman, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 21, 1981 —
REHEARING DENIED
OCTOBER 13, 1981 ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Glenville Haldi,* for appellant.
*Donald J. Armstrong,* for appellee.