A11A1242. KITCHENS et al. v. EZELL et al.

(726 SE2d 461)

PHIPPS, Presiding Judge.

Shonquetta Kitchens, Merrill Kitchens, and Merrill Kitchens, individually and as administrator of the estate of Makayla Kitchens (the "Kitchenses") sued Trenton Ezell and Azaline Jackson for damages arising out of an automobile accident. Contending that their automobile liability insurer, State Farm Mutual Automobile Insurance Company, had reached a settlement with the Kitchenses on their behalf, Ezell and Jackson filed a motion to enforce that settlement. The trial court granted the motion to enforce, and it denied a corresponding motion by the Kitchenses, who claimed that no settlement had ever been reached, for partial summary judgment on the issue of affirmative defense of settlement. The trial court, sua sponte, also awarded attorney fees and costs under OCGA § 9-15-14, and directed that they be paid by the Kitchenses' counsel. For the reasons that follow, we find that the trial court erred in granting the motion to enforce settlement, in denying the motion for partial summary judgment, and in awarding attorney fees.

> We conduct a de novo review of a trial court's order on both a motion to enforce a settlement agreement and a motion for summary judgment. The issues raised in such motions are analogous. To prevail on either a motion for summary judgment or a motion to enforce a settlement agreement, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the appellant's case.[1]

The evidence, which is not in dispute, shows that on June 28, 2009, a car driven by Ezell collided with a car driven by Shonquetta

---

[1] *Anderson v. Benton*, 295 Ga. App. 851, 852 (673 SE2d 338) (2009) (punctuation and footnotes omitted).

Kitchens. Kitchens and her daughter, Makayla, were both injured in the accident, and Makayla later died of her injuries.

The car driven by Ezell was owned by Jackson and insured by State Farm. The applicable policy limits were $25,000 per person/$50,000 per accident for bodily injury claims and $25,000 for property damage claims. On August 7, 2009, the attorney representing the Kitchenses sent a letter to State Farm offering to settle his clients' bodily injury claims. The letter initially, however, addressed property damage claims. Counsel requested related information, such as repair estimates, and informed State Farm that "we will look into the property damage claims on this end so that we can sort out any remaining issues."

Counsel then stated that his clients were "anxious to resolve all of their bodily injury claims quickly[.]" The letter asked State Farm for certain insurance documentation and affidavits, and then informed State Farm that his clients had an automobile policy with Liberty Mutual that provided for uninsured motorist coverage. Counsel then wrote:

> [W]e will need to use a bodily injury release of only your insured that preserves my clients' claims for uninsured motorist coverage. If you get that release to me with payment of the available bodily injury liability policy limits and all of the requested insurance information within twenty days of this letter, then my clients will sign the release and those claims will be settled.

After making several unsuccessful attempts to contact the Kitchenses' counsel by phone, State Farm's counsel, by fax on August 21, 2009, accepted the Kitchenses' settlement demand and represented that she would provide, under separate cover, the items specified by the August 7 demand letter. On the next business day, August 24, the Kitchenses' counsel confirmed receipt of State Farm's August 21 fax. Also on August 24, State Farm informed the Kitchenses' counsel that, as a minor, Makayla's settlement would need to be approved by the probate court, and she also left a telephone message that State Farm was having difficulty obtaining the insured's affidavits requested by the demand letter.

On August 25, the Kitchenses' counsel agreed to extend the time allowed to provide the insured's affidavits to August 28. That same day, State Farm's counsel sent the Kitchenses' counsel an e-mail attaching two proposed limited liability releases, and asking him to let her know if they met with his approval. The proposed documents released, "all claims, known and unknown, both to person and

property, which have resulted or may in the future result from an incident which occurred on or about June 28, 2009." The Kitchenses' counsel responded by fax, also on August 25, that he had received State Farm's "release proposal" and that he would review it with his clients "and get back to you." The Kitchenses' counsel's letter also addressed several other issues, including that he would like to schedule an inspection of the vehicle in connection with "the property damage issues," and that State Farm was already aware that Makayla had died and that there would be no court approval of a settlement.

On August 26, 2009, State Farm's counsel notified the Kitchenses' counsel that a proposed release would be provided taking into account Makayla's estate, and then, via courier, delivered a package of documents "per your demand letter," including settlement drafts in the amount of the bodily injury liability policy limits and "[p]roposed (revised) limited liability releases." The letter represented that State Farm had fully met the terms and conditions of the settlement demand and stated that "[i]f this is incorrect, please let me know as soon as possible." The proposed documents again released "all claims, known and unknown, both to person and property, which have resulted or may in the future result from an incident which occurred on or about June 28, 2009."[2]

On August 29, the Kitchenses' counsel responded to State Farm's August 26 letter with a courier package returning the settlement checks. In the accompanying correspondence, he stated his position that, unlike his client's settlement offer, State Farm had proposed a release of "any and all claims," including property damage claims, as well as a release of State Farm and others, in addition to State Farm's insured. The Kitchenses' counsel informed State Farm that he had discussed State Farm's offer with his clients, who had directed him to reject it.

The Kitchenses sued Ezell and Jackson on August 31, 2009 for damages arising out of the automobile collision. The following day, State Farm's counsel sent revised limited releases to the Kitchenses' counsel, who responded that "the opportunity to provide me with a release that complied with the terms of our offer" had passed.

After Ezell and Jackson answered the complaint, asserting defenses of accord and satisfaction, release and/or settlement, and payment, they filed a motion to enforce the settlement which, they

---

[2] The proposed documents also provided, consistent with the previously submitted drafts, that the contemplated release "shall operate as a full and final release, except that it shall not bar any of the claims which the undersigned have against [Jackson or Ezell] to the extent [of] uninsured/uninsured [sic] motorist insurance coverage under any policies other than those issued by State Farm."

maintained, State Farm had reached with the Kitchenses' counsel on their behalf. The Kitchenses, in opposition to Ezell's and Jackson's motion to enforce, moved for partial summary judgment as to the affirmative defenses of settlement. The trial court entered an order granting the motion to enforce settlement agreement and denying the Kitchenses' motion for partial summary judgment. In addition, finding that the Kitchenses' counsel "acted in bad faith during negotiations," the trial court awarded State Farm reasonable attorney fees and costs under OCGA § 9-15-14. The trial court subsequently entered a final order and judgment, from which the Kitchenses appeal.

1. The Kitchenses argue that the trial court erred in granting the motion to enforce settlement agreement and in denying their motion for partial summary judgment because (a) the Kitchenses' settlement offer could not be accepted by a promise of performance, only performance, and (b) State Farm's performance did not meet the terms of the settlement offer. We agree.

(a) "[T]he law . . . favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced."[3] But a settlement agreement is subject to the same requirements of contract formation as other contracts, and "[o]nly when a meeting of the minds exists will an agreement be formed."[4] Thus, an offer to settle "must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; or if it calls for an act, it can be accepted only by the doing of the act."[5]

Ezell and Jackson argue that the presentation of a proper release was a condition of performance, not acceptance.[6] But the offer speci-

---

[3] *Greenwald v. Kersh*, 275 Ga. App. 724, 726 (621 SE2d 465) (2005) (punctuation and footnote omitted).

[4] Id. (citation and punctuation omitted).

[5] *Herring v. Dunning*, 213 Ga. App. 695, 699 (446 SE2d 199) (1994) (citation and punctuation omitted). See *Carterosa, Ltd. v. General Star Indem. Co.*, 227 Ga. App. 246, 248 (1) (489 SE2d 83) (1997) ("the offeror may specify a method through which the offer must be accepted"). We acknowledge the authority relied on by State Farm, particularly *Craddock v. Greenhut Constr. Co.*, 423 F2d 111, 113-114 (5th Cir. 1970), indicating that, if possible, a court should interpret agreements as bilateral, i.e., comprised of mutually interdependent promises. But State Farm does not show that the Kitchenses were not permitted to frame an offer demanding acceptance by performance.

[6] See *Moreno v. Strickland*, 255 Ga. App. 850, 853-854 (1) (567 SE2d 90) (2002) ("[T]he presentation of a proper release in a form acceptable to plaintiff may have been a condition of defendant's performance but it was not an act necessary to acceptance of plaintiff's offer to settle for the policy limits.") (punctuation omitted); *Herring*, supra ("[s]ince plaintiff's offer contained no specified manner of acceptance, defendant's counsel was entitled to accept by mailing the insurer's promise to pay the policy limits in exchange for a full release of its insured, the defendant").

fied that *if* State Farm delivered the bodily injury release, among other things, within 20 days of the settlement offer, *then* his clients would sign the release and the bodily injury claims would be settled.[7] The offer did not, as Ezell and Jackson suggest, contemplate a mutual exchange of promises.[8] We considered a similar situation in *Penn v. Muktar*.[9] There, the claimants' attorney wrote the insurer, also State Farm, offering to settle his clients' bodily injury claims on condition that his clients' written release was limited to bodily injury claims and preserved their right to pursue uninsured motorist benefits claims under other insurance.[10] The offer provided: "If you get me all of the requested insurance information with that release and a draft for the available bodily injury liability insurance within twenty days of this letter, then my clients will sign the release."[11] Within 20 days of the settlement offer, State Farm sent the claimants' attorney a letter purporting to accept the offer, and it enclosed, along with a draft for the bodily injury liability policy limits, a proposed release which would have released State Farm's insured and State Farm from "all claims, known and unknown, both to person and property."[12] The claimants refused to sign the release.[13] We held that State Farm's response constituted a counteroffer and that, because there was no meeting of the minds, there was no settlement.[14]

Ezell and Jackson attempt to distinguish *Penn* by pointing out that the settlement draft in that case was directed to be held in trust pending the execution and return of the release,[15] tantamount, they imply, to adding a condition to the agreement.[16] But here, as in *Penn*, State Farm purported to accept the claimants' offer to settle the bodily injury damage claims but submitted a non-conforming pro-

---

[7] Compare *Moreno*, supra, 255 Ga. App. at 853 (1) (appellee's offer to settle did not include the requirement that he receive the affidavit and release before the time limit expired).

[8] Compare *Jackson Elec. Membership Corp. v. Ga. Power Co.*, 257 Ga. 772, 773-774 (1) (364 SE2d 556) (1988) ("contract originally was and primarily is constituted by the parties' exchange of written promises which, notwithstanding the condition[s] . . . , are nonetheless binding").

[9] 309 Ga. App. 849 (711 SE2d 337) (2011).

[10] Id. at 850.

[11] Id. (punctuation omitted).

[12] Id. (punctuation omitted).

[13] Id.

[14] Id. at 850-851.

[15] Id. at 850. It is not clear in *Penn* whether the submission of the settlement checks in trust had a substantial bearing on the result reached.

[16] See *Johnson v. Martin*, 142 Ga. App. 311 (235 SE2d 728) (1977) (requirement that settlement check be presented for payment only upon execution of release qualified acceptance by adding a condition to the agreement).

posed release of any and all claims, including property damage.[17] And as discussed above, the Kitchenses were entitled to specify the manner of acceptance by, in this case, requiring performance within 20 days of the offer. Thus, whether, as in *Penn*, State Farm submitted a counteroffer, or State Farm simply failed to comply with the terms of the Kitchenses' offer, there was no meeting of the minds, and thus no settlement agreement formed.

(b) We also agree with the Kitchenses that State Farm's tender was not sufficient to constitute acceptance of the settlement offer. In light of *Penn*, we cannot conclude that State Farm's proposed release, which included a release of property damages, was substantially the same as a release of bodily injury damages.[18] Ezell and Jackson suggest, however, that the Kitchenses' attorney's "pre-performance silence regarding the claimed defects" should be considered an admission as to the sufficiency of the proposed release, and that the attorney's purposeful frustration of State Farm's counsel should estop the Kitchenses from claiming that State Farm failed to perform. Ezell and Jackson also argue that the Kitchenses' objection failed to account for the statutory requirements for limited liability releases.

"Acquiescence or silence, when the circumstances require an answer, a denial, or other conduct, may amount to an admission."[19] Further, "where good faith requires an answer to a letter, a party is presumed to admit the propriety of acts mentioned in a letter to him when he fails to answer the letter, and . . . such presumption is rebuttable."[20] Here, the Kitchenses' attorney replied to State Farm's release proposal on August 25, 2009, the same day he received it, by informing State Farm's attorney that he would review it with his clients and get back to the attorney, implying, State Farm argues, that he would make any objections before the deadline for accepting the settlement offer passed on August 27, which the Kitchenses'

---

[17] See *Penn*, supra, 309 Ga. App. at 850; *Jones v. Frickey*, 274 Ga. App. 398, 402 (618 SE2d 29) (2005) ("a purported acceptance of a settlement offer which imposes conditions or otherwise varies the offer will be construed as a counteroffer to the offer"), aff'd, *Frickey v. Jones*, 280 Ga. 573 (630 SE2d 374) (2006).

[18] The Kitchenses also contend that the proposed release was inconsistent with their settlement offer because it released State Farm as well as Ezell and Jackson, but

> [b]ecause the [Kitchenses'] offer to settle bodily injury claims for the State Farm policy limits specifically included an offer to release the insureds from those claims, it necessarily implied an offer to release State Farm from its contractual responsibility under the policy to provide coverage for those claims.

*Penn*, supra, 309 Ga. App. at 850, n. 2.

[19] OCGA § 24-3-36.

[20] *Collins v. Economic Opportunity Atlanta*, 159 Ga. App. 898, 900 (285 SE2d 562) (1981). See OCGA § 24-4-23.

attorney failed to do. When State Farm's counsel submitted the settlement check, proposed release, and other requested documents on August 26, she also wrote that the terms of the settlement demand had been met thereby, but that if this was not correct, "please let me know as soon as possible." But State Farm does not show that the Kitchenses' attorney had a legal duty to advise State Farm as to the appropriateness of the proposed release before the expiration of the offer, considering, among other things, that he was not silent but stated his intent to consult with his clients, he committed to no deadline for responding, and the terms of the Kitchenses' offer were in writing and equally known to all parties, and so State Farm could not have been deceived as to its requirements.[21] Nor does any evidence show that the Kitchenses' attorney prevented State Farm from complying with that offer.[22]

Ezell and Jackson further show that OCGA § 33-24-41.1 (b), which governs qualifying limited releases, provides that a limited release shall release the settling carrier "from all liability from any claims of the claimant or claimants based on injuries to such claimant or claimants," and the insured "from all personal liability from any and all claims arising from the occurrence on which the claim is based except to the extent other insurance coverage is available which covers such claim or claims."[23] According to Ezell and Jackson, OCGA § 33-24-41.1 "seems to require" a release of any and all claims, although "[a]ny tension between the governing statute" and the Kitchenses' offer might have been resolved if the Kitchenses' attorney had responded to State Farm's "pleas for contact."

The implication of Ezell's and Jackson's argument is that a release could not comply with both OCGA § 33-24-41.1 and the Kitchenses' settlement offer. Assuming, but not deciding, that the Kitchenses' offer contemplated a legal impossibility, or merely, as State Farm suggests, was in "tension" with the governing law, it does

---

[21] See *Tybrisa Co. v. Tybeeland, Inc.*, 220 Ga. 442 (139 SE2d 302) (1964) ("In cases of silence there must be not only the *right* but the *duty* to speak before failure to do so can operate as an estoppel. . . . In order for an estoppel to arise, there must generally be some intended deception, or gross negligence amounting to constructive fraud by which another is misled to his injury.") (citations omitted; emphasis in original).

[22] Compare, e.g., *Kent v. Hunt & Associates*, 165 Ga. App. 169, 171 (5) (299 SE2d 123) (1983) (jury verdict in favor of contractor affirmed, where in cross-claims for breach of contract, "[t]here [was] evidence in the record that [the contractor] was locked off the job by [the owner]," and jury was properly charged that "where a party prevents the performance of a stipulation of a contract undertaken by the other party, he is estopped from setting up in his own behalf any injury which may have resulted from the nonperformance of such condition").

[23] OCGA § 33-24-41.1 (b).

not follow that State Farm could accept something other than the offer made by the Kitchenses.

For the foregoing reasons, we conclude that the trial court erred in granting Ezell's and Jackson's motion to enforce settlement agreement and in denying the Kitchenses' motion for partial summary judgment.

2. The Kitchenses also claim that the trial court erred in awarding attorney fees under OCGA § 9-15-14.[24] We agree.

In the same order in which it ruled on the motion to enforce the settlement agreement and the motion for partial summary judgment, the trial court, sua sponte, ruled that the Kitchenses owed attorney fees and costs under OCGA § 9-15-14. It decided in the final order that the award was under OCGA § 9-15-14 (a) and (b), against the Kitchenses' counsel, and in favor of Ezell and Jackson, for $14,536.55.

OCGA § 9-15-14 (a) contemplates that attorney fees shall be awarded if a party "has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position." OCGA § 9-15-14 (b) permits the trial court to award fees if

> it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct. . . .

"We affirm an award under subsection (a) if there is any evidence to support it, while we review subsection (b) awards for abuse of discretion."[25]

To the extent that the trial court's award implicates the Kitchenses' counsel's alleged actions before the underlying lawsuit was

---

[24] We disagree with Ezell and Jackson that the Kitchenses waived the right to contest the attorney fees award on appeal because they did not sufficiently raise an objection below. The trial court did not provide advance notice of its decision to award fees, and so the Kitchenses could not have interposed a prior objection. See *Williams v. Cooper*, 280 Ga. 145, 147 (1) (625 SE2d 754) (2006) (a trial court may award attorney fees sua sponte under OCGA § 9-15-14 (b), but notice and a hearing is still required). By stipulation of the parties, the Kitchenses did waive a later scheduled hearing on the amount of the fees. See *Ellis v. Caldwell*, 290 Ga. 336 (720 SE2d 628) (2012) (party may waive hearing on a motion for attorney fees). But they did not thereby agree with, or acquiesce to, the attorney fee award, and this lack of consent was stated expressly, and repeatedly, in the stipulation filed with the trial court.

[25] *Fox v. City of Cumming*, 298 Ga. App. 134, 135 (679 SE2d 365) (2009) (footnote omitted).

filed, OCGA § 9-15-14 (a) and OCGA § 9-15-14 (b) address "the actions that may be undertaken in connection with the underlying *legal proceedings* and not upon any prelitigation actions. . . ."[26] Further, as can be seen in Division 1,[27] the Kitchenses' position that no settlement was reached was legally supportable. Accordingly, the Kitchenses' claims were not so devoid of a justiciable issue "that it could not be reasonably believed that a court would accept" them.[28] Nor did their opposition to the motion to enforce settlement agreement "lack[ ] substantial justification."[29] In addition, we cannot conclude that the record supports the trial court's findings that the actions of the Kitchenses' counsel during the underlying legal proceedings unnecessarily enlarged those proceedings or were interposed for harassment. Accordingly, we find that no evidence supported an award under OCGA § 9-15-14 (a), and that it was an abuse of discretion to award fees under OCGA § 9-15-14 (b).[30]

*Judgment reversed. McFadden, J., concurs. Andrews, J., concurs in judgment only.*

DECIDED MARCH 16, 2012 —
RECONSIDERATION DENIED APRIL 10, 2012 — 

*Swope & Rodante, Darrell W. Hinson, Bondurant, Mixson & Elmore, Mary W. Pyrdum, Jill Pryor*, for appellants.

*Martin Snow, Cubbedge Snow III, Thomas P. Allen III*, for appellees.

---

[26] *Cobb County v. Sevani*, 196 Ga. App. 247, 248 (395 SE2d 572) (1990) (emphasis in original).

[27] Supra.

[28] OCGA § 9-15-14 (a).

[29] OCGA § 9-15-14 (b).

[30] See *Fox*, supra.