**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**July 12, 2012**

# In the Court of Appeals of Georgia

A12A0278. TORRES v. ELKIN.

DILLARD, Judge

In this personal-injury action arising from a motor-vehicle accident, Jason Torres appeals the trial court's order granting Cassandra Lee Elkin's motion to enforce settlement and denying his motion for partial summary judgment. Torres argues that Elkin's insurance company's purported acceptance was neither identical to the terms of his offer nor unconditional and unequivocal. For the reasons discussed *infra*, we conclude that the parties failed to enter into an enforceable settlement agreement and thus reverse the trial court's order.

The record in this case shows that on March 27, 2008, Torres and Elkin were involved in a motor-vehicle accident, which resulted in Torres suffering injuries so severe that he incurred over $500,000 in medical expenses. Elkin's vehicle was

covered by an insurance policy issued by Infinity Standard Insurance Company ("Infinity"). After the accident, Infinity offered to settle Torres's bodily-injury claims for $25,000 in exchange for Torres executing an enclosed release and agreeing to satisfy any medical liens. Torres's attorney rejected the offer and returned the check for $25,000, indicating that his client had not yet made a decision about whether to settle the case. Subsequently, Infinity resent a check for $25,000 and proposed a new settlement agreement, according to which Infinity would settle Torres's claims in exchange for Torres's execution of a limited-liability release.

Torres's attorney rejected Infinity's proposed offer in a letter dated February 12, 2010, and made a counteroffer to settle Torres's claims if certain conditions were met by "the end of the month." Torres's attorney's letter stated in relevant part:

> We will need to [sic] a release of your insured that reserves Mr. Torres' rights to recover uninsured motorist benefits and that does not contain any language about how my client has not relied upon any representations by your side in signing the release. If you get me that described release with a check for $250.00 and all of the statements and insurance documents requested above by the end of the month, then my client will sign the release. Please note that acceptance may only occur by my timely receipt of all of the requested items.

2

The "documents requested above" consisted of the following: (1) any recorded statements from eyewitnesses to the accident; (2) recorded statements obtained by Infinity from Elkin; (3) verification under oath that the previously offered $25,000 represented the full amount of available bodily-injury insurance coverage; (4) a copy of each insurance policy issued by Infinity with a statement under oath from a corporate officer or claims manager verifying that the documents were complete and accurate copies of each policy; and (5) a release that reserved Torres's rights to recover uninsured-motor-vehicle benefits and that did not contain any language that Torres "had not relied upon any representations" by Infinity.

Infinity faxed Torres's attorney a letter on February 22, 2010, asking whether the $250.00 represented an additional property-damage claim. On February 24, 2010, Infinity wrote Torres's attorney, advising him that Infinity was preparing a response to his February 12, 2010 letter and asking whether his client would agree to satisfy any medical liens arising from the accident.

In a separate letter dated February 24, 2010, Infinity responded to the February 12 offer to settle Torres's claims, noting that Torres's attorney had already received the requested affidavits, a check for $25,000, and the declarations page. Infinity also attached a certified copy of Elkin's liability-insurance policy, Elkin's recorded

3

statement, a check for $250.00, and a third proposed limited-liability release. The letter from the Infinity representative further stated, "Please note that I have included indemnification language in the release due to the hospital lien notices we have received. I have not received a response to the question in my letter faxed to you yesterday in which I asked if you intended to protect the liens." Infinity went on to emphasize its "trust that your office will satisfy any liens arising out of this matter." Infinity's enclosed release required Torres to indemnify Infinity for all claims for liens arising out of the accident and to pay all reasonable costs in defending against liens, including attorney's fees.[1] At the close of the letter, Infinity asked to be informed immediately "if any items are deficient in any manner" and emphasized Infinity's "intent to comply with all conditions of [Torres's] demand." There were no further communications between the parties before the settlement offer expired on February 28, 2010.

---

[1] The release provided in relevant part, "As further consideration for payment of said sum, the Undersigned hereby agrees to completely indemnify and hold harmless the Limited Releasee and his Insurance Carrier, identified above, for any and all claims for liens (including but not limited to all attorney, hospital, physician, ERISA, Medicare, and Medicaid liens) arising out of personal injuries to the Undersigned asserted by anyone or any entity resulting from the above-described occurrence, said indemnity to include all reasonable costs in defending against such liens including attorney's fees."

4

On March 4, 2010, Torres's attorney wrote to Infinity, acknowledging the receipt of what he described as Infinity's "counteroffer to settle [his] client's bodily injury claims" and insisting that his client would not agree to defend Infinity or Elkin against claims by third parties. The next day Infinity sent another release that did not contain indemnification language, but which did contain language stating that Torres had not relied on any representations outside of the agreement. The parties communicated further regarding the documentation Infinity provided, but they were unable to resolve the matter.

On March 9, 2010, Torres filed suit against Elkins and the other motorists involved, Cathy Isola and Michael Carter, for injuries and other damages that he suffered as a result of the motor-vehicle accident.[2] Shortly thereafter, uninsured-motorist carriers Progressive Max Insurance Company and Progressive Premier Insurance Company of Illinois entered appearances as unnamed defendants in this suit. On February 1, 2011, Elkin filed a motion to enforce settlement, contending that Infinity had settled with Torres on Elkin's behalf by its letter of February 24, 2010. Torres opposed the settlement motion and moved for partial summary judgment on

---

[2] Torres dismissed defendant Carter without prejudice on May 27, 2010.

5

the same issue. The trial court granted Elkin's motion to enforce the settlement and denied Torres's motion for partial summary judgment on April 18, 2011, holding that Infinity had accepted Torres's settlement offer via its February 24, 2010 letter.

On May 13, 2011, Torres filed a notice of appeal from the April 18 order. However, this Court dismissed the appeal because the April 18 order did not dispose of all claims against all parties. A few months later, Torres filed a motion to dismiss defendant Isola and the two defendant insurance carriers and for entry of final judgment, and on August 15, 2011, the trial court granted this motion, stating, "[t]he issues having been duly heard and a decision having been rendered, it is hereby ordered and adjudged that judgment is entered in favor of Defendant Elkin, and that Plaintiff takes nothing by this action."

On September 14, 2011, Torres filed a notice of appeal from the trial court's August 15, 2011 order. But this Court again dismissed the appeal on the ground that a plaintiff's voluntary dismissal of a party is not a decision that a plaintiff may then appeal.[3] We further noted that a voluntary dismissal cannot be used to obtain

---

[3] *See Waye v. Cont'l Special Risks*, 289 Ga. App. 82, 84 (656 SE2d 150) (2007); *Studdard v. Satcher, Chick, Kapfer, Inc.*, 217 Ga. App. 1, 3 (456 SE2d 71) (1995); *Mitchell v. Wyatt*, 192 Ga. App. 127, 129 (1) (384 SE2d 227) (1989).

appellate review of a ruling entered by the trial court more than 30 days from the filing of the notice of appeal.[4] Torres then moved for reconsideration. Consequently, we reinstated the case and directed the parties to address the jurisdictional issue as well as the merits. This appeal follows.

1. We first address the issue of whether we have jurisdiction in this case. It is well established that this Court has a solemn duty to inquire into our jurisdiction to review the errors enumerated on appeal,[5] and it is a duty we do not take lightly.[6] At the same time, this Court is also charged with avoiding the dismissal of an appeal and reaching the merits of a case whenever it is reasonable to do so.[7] After conducting such an inquiry in this matter, we find that we have jurisdiction over this appeal.

---

[4] *See Waye*, 289 Ga. App. at 84.

[5] *See Coleman v. State*, 305 Ga. App. 680, 680 (700 SE2d 668) (2010); *Miller v. State*, 264 Ga. App. 801, 802 (592 SE2d 450) (2003).

[6] *Cf. Salazar v. Buono*, ___ U.S. ___ (130 S.Ct. 1803, 176 LEd2d 634) (2010) (Scalia, J., concurring) ("[A]dhering to . . . limits upon our jurisdiction respects the authority of those whom the people have chosen to make and carry out the laws.").

[7] *See* OCGA § 5-6-30 ("[T]his article shall be liberally construed so as to bring about a decision on the merits of every case appealed and to avoid dismissal of any case . . . except as may be specifically referred to in this article."); *see also Sellers v. Nodvin*, 262 Ga. 205, 207 (1) (b) (415 SE2d 908) (1992) (holding that "the policy of the law is to avoid a dismissal of the appeal and reach the merits of the case where it is reasonable to do so" (punctuation omitted)).

OCGA § 5-6-34 (a) (1) provides that direct appeal may be had from all final judgments of the trial court.[8] A final judgment exists only "[when] the case is no longer pending in the court below. . . ."[9] A party has 30 days after entry of an appealable judgment to file its notice of appeal.[10] And once a final judgment is appealed, all judgments, rulings, or orders rendered in the case which are raised on appeal and may affect the proceedings below may be appealed regardless of whether they would be appealable standing alone.[11] In the case of an order granting a motion to enforce a settlement agreement, the order is not final until the trial court expressly enters final judgment on that order.[12] The Supreme Court of Georgia has held that "notwithstanding the trial court's grant of a motion to enforce a settlement, a case is not at an end until such a time as the agreement has been made the judgment of the

---

[8] OCGA § 5-6-34 (a) (1) ("Appeals may be taken to the Supreme Court and the Court of Appeals from . . . [a]ll final judgments, that is to say, where the case is no longer pending in the court below . . . .").

[9] OCGA § 5-6-34 (a); *see also Metro. Atlanta Rapid Transit Auth. v. Federick*, 187 Ga. App. 696, 698 (1) (371 SE2d 204) (1988) ("A judgment is final only when it disposes of the entire controversy, leaving nothing for the Court to do in the case.").

[10] OCGA § 5-6-38 (a).

[11] OCGA § 5-6-34 (d).

[12] *See Underwood v. Underwood*, 282 Ga. 643, 644 (1) (651 SE2d 736) (2007); *Zeitman v. McBrayer*, 201 Ga. App. 767, 768 (2) (b) (412 SE2d 287) (1991).

court, thereby terminating the litigation."[13] And our Supreme Court has further held that the 30-day period for filing a notice of appeal begins to run only when the trial court explicitly enters final judgment, rather than when the trial court grants the motion to enforce the settlement agreement.[14]

And here, no final judgment was entered simultaneously with the trial court's April 18, 2011 order granting Elkin's motion to enforce settlement and denying Torres's motion for partial summary judgment. In fact, the trial court entered final judgment with respect to its April 18 order only on August 15, 2011, when it also granted Torres's motion to dismiss his claims against the other remaining defendants, and thus, the 30-day time period for filing his notice of appeal did not begin to run until that point.[15]

---

[13] *Underwood*, 282 Ga. at 644 (1) (punctuation omitted).

[14] *Id*.

[15] The trial court indicated entry of final judgment on August 15, 2011, in stating, "[t]he issues having been duly heard and a decision having been rendered, it is hereby ordered and adjudged that judgment is entered in favor of Defendant Elkin, and that Plaintiff takes nothing by this action."

9

Nevertheless, our conclusion that the trial court's August 15, 2011 order represented a final judgment does not end our inquiry.[16] In addition to the requirement of finality, a notice of appeal must be from an appealable decision or judgment, and must be brought by one with standing to pursue the appeal.[17] It is a well-established principle that "at the appellate level, one cannot complain of a judgment, order, or ruling that his own procedure or conduct procured or aided in causing."[18] And thus, a voluntary dismissal is not a decision or judgment that a plaintiff may appeal.[19] But in this matter, Torres is appealing a final, appealable entry of judgment that was included in the same order that voluntarily dismissed the remaining defendants. Accordingly, the order enforcing settlement was not appealable until the trial court entered final judgment.[20] Therefore, Torres's dismissal of the additional defendant was not sufficient to create an appealable judgment, and the judgment from which

---

[16] *See Studdard*, 217 Ga. App. at 3.

[17] *See id.*

[18] *Mitchell*, 192 Ga. App. at 129 (1) (punctuation omitted); *accord Waye*, 289 Ga. App. at 84; *Studdard*, 217 Ga. App. at 3.

[19] *Waye*, 289 Ga. App. at 84; *see also Studdard*, 217 Ga. App. at 3; *Mitchell*, 192 Ga. App. at 129 (1).

[20] *See Underwood*, 282 Ga. at 644 (1).

Torres is appealing is not one his own conduct procured or caused.[21] Given the foregoing and our statutory mandate to decide cases on the merits whenever it is reasonable to do so, we find that we have jurisdiction over this appeal.[22]

2. We now turn to the merits of this case, and Torres's claim that the trial court's decision granting Elkin's motion to enforce the settlement agreement and denying his motion for partial summary judgment runs contrary to a fundamental principle of Georgia contract law—*i.e.*, that a party offering to contract with another is at liberty to specify the terms and conditions by which that offer is to be accepted.[23] Specifically, Torres argues that the performance by which Infinity purported to accept

---

[21] *Cf. Waye*, 289 Ga. App. at 82-84 (dismissing appeal on the grounds that the plaintiff could not render a previous ruling appealable by voluntarily dismissing the remaining defendant); *Studdard*, 217 Ga. App. at 1-3 (dismissing appeal when the appellant could have appealed two adverse summary judgment rulings when entered); *Mitchell*, 192 Ga. App. at 127-29 (dismissing appeal on the grounds that the plaintiff could not render a previous ruling appealable by voluntarily dismissing the action).

[22] *See* OCGA § 5-6-30; *Sellers*, 262 Ga. at 207 (1) (b).

[23] *See Herring v. Dunning*, 213 Ga. App. 695, 699 (446 SE2d 199) (1994) ("An offer may be accepted . . . either by a promise to do the thing contemplated therein, or by the actual doing of the thing. The offer must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; *or if it calls for an act, it can be accepted only by the doing of the act*.") (emphasis supplied) (citation and punctuation omitted); *Sheffield v. Whitfield*, 6 Ga. App. 762, 764 (2) (65 SE 807) (1909) (same).

11

his offer was neither identical to the terms of the offer nor unconditional and unequivocal. We agree that Infinity's purported acceptance constituted a counteroffer and therefore, reverse the trial court's order.

In reviewing the trial court's order on both a motion to enforce a settlement agreement and a motion for summary judgment, we apply a *de novo* standard of review[24] and, thus, view the evidence in a light most favorable to the nonmoving party.[25] Moreover, well-established principles guide our inquiry into whether the parties entered into a settlement agreement.[26] In order to prevent litigation, "[c]ompromises of doubtful rights are upheld by general policy . . . ."[27] At the same time, courts are certainly limited to "those terms upon which the parties themselves have mutually agreed."[28] Indeed, apart from such mutual agreement, no enforceable

---

[24] *Anderson v. Benton*, 295 Ga. App. 851, 852 (673 SE2d 338) (2009); *see also DeRossett Enters., Inc. v. Gen. Elec. Corp.*, 275 Ga. App. 728, 728 (621 SE2d 755) (2005).

[25] *Matrix Fin. Servs. v. Dean*, 288 Ga. App. 666, 666 (655 SE2d 290) (2007).

[26] *Anderson*, 295 Ga. App. at 854 (1).

[27] *Herring*, 213 Ga. App. at 696 (punctuation omitted).

[28] *Id.* at 696-97 (punctuation omitted).

12

contract exists between the parties.[29] And settlement agreements must meet the same requirements of formation and enforceability as other contracts.[30] Thus, an answer to an offer "will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer."[31] The offer must be accepted "unequivocally and without variance of any sort."[32] And if a purported acceptance of the plaintiff's settlement offer imposes any new conditions, it constitutes a counter-offer rather than an acceptance.[33] Furthermore, the party asserting the existence of a contract has the burden of proving its existence and its terms.[34] We consider Torres's argument on appeal with these guiding principles in mind.

Torres contends that Infinity made its acceptance conditional on his assent to indemnification language and a lien affidavit in the proposed release, thus rendering

---

[29] *Id.* at 697.

[30] *Greenwald v. Kersh*, 275 Ga. App. 724, 725-26 (621 SE2d 465) (2005).

[31] *Wyatt v. House*, 287 Ga. App. 739, 742 (3) (652 SE2d 627) (2007) (punctuation omitted).

[32] *Id.* (punctuation omitted).

[33] *Id.* (punctuation omitted).

[34] *See Millwood v. Art Factory, Inc.*, 306 Ga. App. 164, 166 (702 SE2d 7) (2010); *Laverson v. Macon Bibb County Hosp. Auth.*, 226 Ga. App. 761, 762 (487 SE2d 621) (1997).

its response a counter-offer rather than an acceptance. As previously noted, Infinity's February 24, 2010 response to Torres's offer stated: "I [Infinity] trust that your office will satisfy any liens arising out of this matter." In deciding whether Infinity validly accepted Torres's offer, we must decide whether this language makes Infinity's acceptance conditional on Torres's assent to an additional term, or whether it is mere precatory language seeking confirmation of an aspect of the agreement. Language is properly characterized as "precatory" when its "ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory direction,"[35] and such language does not render a purported acceptance a counter-offer.[36] For example, this Court has held that a defendant unconditionally accepted a plaintiff's offer despite noting in the acceptance letter his "understanding that no liens of any kind exist in this case[,]" and asking that the plaintiff "confirm this at [his] earliest convenience."[37]

---

[35] *Raines v. Duskin*, 247 Ga. 512, 523 (2) (277 SE2d 26) (1981) (punctuation omitted).

[36] *See Herring*, 213 Ga. App. at 699; *see also Pourreza v. Teel Appraisals & Advisory, Inc.*, 273 Ga. App. 880, 883 (616 SE2d 108) (2005) (finding precatory language when the offeree asked the offeror to "let me know" if other documents were necessary).

[37] *Herring*, 213 Ga. App. at 698 (punctuation omitted).

In contrast, when the offeree's response makes acceptance conditional on the offeror's assent to an additional term, the response then constitutes a counter-offer rather than an acceptance.[38] In fact, our Supreme Court has found that no acceptance occurred when the response to a settlement offer noted that "payment is complicated by what appears to be a [hospital lien] as well as potential liens by your client's health carrier."[39] Even more recently that Court found a purported acceptance constituted a counter-offer when an insurer's response to a settlement offer included the following statement: "Please call me in order to discuss how the lien(s) (Specifically, but not limited to the $273,435.35 lien from [the hospital]) will be resolved as part of this settlement."[40] And indeed, we likewise held that a settlement was unenforceable because an offeree made a counteroffer when its purported acceptance indicated, "You requested settlement with a Limited release[;] however, we feel our insured is

---

[38] *See McReynolds v. Krebs*, 290 Ga. 850, 853 (2) (725 SE2d 584) (2012); *Frickey v. Jones*, 280 Ga. 573, 575-76 (630 SE2d 374) (2006); *Wyatt*, 287 Ga. App. at 741-742 (3).

[39] *Frickey*, 280 Ga. at 575-76.

[40] *McReynolds*, 290 Ga. at 853 (2).

15

better protected with a Release in Full. Please check with the UIM carrier on waiving their subrogation allowing us to settle with the Release in Full."[41]

In the case *sub judice*, Torres neither offered to satisfy the liens arising from the accident nor made representations regarding the existence or nonexistence of liens.[42] And Infinity's purported acceptance did not simply inquire whether Torres would agree to satisfy any liens or state its current understanding of the matter.[43] Rather, the language stating, "I trust that your office will satisfy any liens arising out of this matter," is sufficiently insistent to indicate a requirement that Torres was required to satisfy for Infinity's acceptance to be effective.[44] A reasonable person in the position of the other contracting party would interpret such language as imposing

---

[41] *See Wyatt*, 287 Ga. App. at 741-42 (3).

[42] *Cf. Mealer v. Kennedy*, 290 Ga. App. 432, 436 (659 SE2d 809) (2008) (indicating that an insurer's request that the injured party sign an affidavit certifying that no liens existed was merely an attempt to memorialize a previous understanding).

[43] *Cf. Herring*, 213 Ga. App. at 699; *Pourreza, Inc.*, 273 Ga. App. at 883.

[44] *See McReynolds*, 290 Ga. at 853 (2); *Frickey*, 280 Ga. at 573-76; *see also Akron Pest Control v. Radar Exterminating Co.*, 216 Ga. App. 495, 497 (1) (455 SE2d 601) (1995) (indicating that courts may turn to a dictionary for the plain, ordinary, and popular sense of a word in interpreting contracts); *also* THE COMPACT OXFORD ENGLISH DICTIONARY (2d ed. 1998) (defining "to trust" as, *inter alia*, "to rely or depend on").

16

a condition, rather than as merely precatory.[45] Thus, we conclude that Infinity's February 24, 2010 letter constituted a counter-offer rather than an unconditional and unequivocal acceptance,[46] and therefore, no binding settlement agreement was formed.[47] Accordingly, we reverse the trial court's order granting Infinity's motion to enforce settlement and denying Torres's motion for partial summary judgment.

*Judgment reversed. Ellington, C. J., and Phipps, P. J., concur.*

---

[45] *See generally Greenwald*, 275 Ga. App. at 727; *Legg v. Stovall Tire & Marine, Inc.*, 245 Ga. App. 594, 596 (538 SE2d 489) (2000).

[46] Because we conclude that Infinity's purported acceptance was a counteroffer, we need not address the other alleged deficiencies Torres identifies in Infinity's response to his settlement offer.

[47] Importantly, we note that an insurance company does not act in bad faith *solely* because it fails to accept a settlement within the deadline set by the injured party's attorney. *See Southern General Ins. Co. v. Wellstar Health Systems, Inc.*, ___ Ga. App. ___, Slip op. at 4 (Case No. A11A2065; decided March 20, 2012) (recognizing a "safe harbor" from liability for bad faith when an insurer acts promptly to settle a case involving clear liability and special damages in excess of the applicable policy limits, and the sole reason for the parties' inability to reach a settlement is the plaintiff's unreasonable refusal to assure the satisfaction of any outstanding hospital liens).