**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 22, 2013**

# In the Court of Appeals of Georgia

A12A2464. ARNOLD v. NEAL.

DILLARD, Judge.

In this personal-injury action arising from a motor-vehicle accident, Donna Arnold appeals the trial court's orders granting Danny Neal's motion to enforce settlement and his motion for summary judgment. Specifically, Arnold contends that Neal's insurance company's tender was not identical to the terms of her settlement offer and, therefore, did not constitute an acceptance. For the reasons set forth *infra*, we conclude that the parties entered into an enforceable settlement agreement and, thus, we affirm the trial court's orders.

The record in this case shows that on December 20, 2010, Arnold and Neal were involved in a motor-vehicle accident, in which Neal's vehicle crossed the road's double yellow line and collided head-on with Arnold's vehicle. As a result, Arnold

suffered injuries so severe that she incurred over $700,000 in medical expenses. Neal's vehicle was covered by an insurance policy issued by Allstate Fire & Casualty Insurance Company ("Allstate"), and the applicable policy limit was $100,000 for bodily-injury claims.

On February 14, 2011, Arnold's attorney sent a letter to an Allstate claims adjuster entitled "Policy Limit Demand In Exchange of a Limited Release." The letter, in relevant part, noted:

> It is my understanding that your insured's policy limits are only $100,000. If I am incorrect, please contact me immediately. However, relying on this information, Ms. Arnold has authorized me to demand your insured's policy limits of $100,000. We will only agree to this pursuant [sic] a limited release and you must not deny any liability on behalf of Allstate or your insured in said release. Additionally, the release must not contain any indemnification language as we are unwilling to provide indemnification, however, [Ms. Arnold] is on Medicaid and we will take care of any Medicaid lien as a result of this wreck. Finally, afterwards, we ask to speak to your insured for the sole purpose of seeking any other insurance policies he may hold that would potentially cover this incident.

> We must receive the policy limits no later than February 28, 2011[,] by 5:00 p.m. at my office (fourteen days). Again the limited release must not contain any indemnification language other than for

Medicaid Liens. All communication must be in writing after receipt of this demand.

On February 18, 2011, the Allstate claims adjuster responded to Arnold's attorney's demand letter with correspondence noting that "Allstate is extending an offer of policy limits of $100,000 as full and final settlement of the bodily injury claim." In addition, the claims adjuster's letter requested that Arnold's attorney contact her to discuss the manner in which to issue the check. And on February 22, 2011, Arnold's attorney replied, informing the claims adjuster as to how to issue the check and adding "Please note the conditions that must be met that were made in our initial demand. These conditions must be met."

On February 24, 2011, Allstate's counsel, who had been retained the day before for purposes of preparing the limited release, sent a letter to Arnold's attorney, which provided, in relevant part, as follows:

> I understand that your client has accepted Allstate's $100,000.00 policy limits, pursuant to a Limited Liability Release, to settle and compromise the claims of your client arising out of the December 20, 2010 motor vehicle accident. In that regard, please find enclosed our proposed, form Limited Liability Release and Lien Affidavit for your review. As you requested I have taken out all indemnification language, but have indicated that Medicaid liens will be satisfied, negotiated and/or

3

resolved out of the settlement proceeds. If you are not agreeable to my proposed language I am sure we can agree to language agreeable to all parties. I have also taken out the language concerning denial of liability as you requested.

The letter included a limited-liability release and lien affidavit that had been drafted as characterized by Allstate's counsel. And the following day, Arnold's attorney received the $100,000 check from Allstate, which had been hand-written by the claims adjuster and included the following notation: "Full + final settlement of any and all claims for bodily injury arising from loss 12/20/10."

Arnold's attorney did not immediately respond after receiving the settlement check. Instead, on March 4, 2011, Arnold filed a personal-injury lawsuit against Neal and several John Doe defendants for injuries and other damages that she suffered as a result of the motor-vehicle accident. Subsequently, on March 11, 2011, Arnold's attorney sent a letter to Allstate's counsel, noting that by writing "Full and Final Settlement of any and all claims for bodily injury arising from her loss on 12/20/10," Allstate attempted to preclude Arnold from pursuing "any other remedies that the law would allow," and, therefore, rejected Arnold's settlement offer. Allstate's counsel responded with correspondence a few days later, which noted the following:

Allstate certainly does not contend, and has never contended, that the settlement in this case was for anything other than a limited release as is clear from my February 24, 2011 letter to you. Allstate further denies that the language on the settlement check contains any kind of counter offer. This case has been settled pursuant to a limited release and the language on the check does not affect that.

Allstate's counsel further added that Arnold could cash the check as written with full knowledge that the settlement was pursuant to the limited release, but that in light of Arnold's attorney's concerns, a second check without the objectionable language would be immediately issued. Nevertheless, Arnold's attorney responded the same day via email, maintaining that "[h]ad Ms. Arnold cashed the check, she would have been prohibited to pursue any other claims for her injuries, which is the only reason to have a limited release."

Thereafter, Neal filed an answer to Arnold's complaint. And on June 8, 2011, Neal filed a motion to enforce settlement, arguing that Allstate settled with Arnold on Neal's behalf by its letter of February 24, 2011, which accepted all the terms of Arnold's offer and enclosed the limited release. On July 28, 2011, the trial court granted Neal's motion to enforce settlement, finding that Allstate counsel's February 24, 2011 letter and the accompanying limited release constituted an acceptance of

Arnold's offer. But because Arnold had claims remaining against the John Doe defendants, the trial court did not immediately dismiss the case. Several months later, however, Neal filed a motion for summary judgment, arguing that the settlement extinguished all of Arnold's claims against him. The trial court granted Neal's motion, and this appeal follows.

1. Arnold contends that the trial court erred in granting Neal's motion to enforce settlement, arguing that Allstate's tender was not identical to the terms of her settlement offer and, therefore, did not constitute an acceptance. We disagree.

At the outset, we note that in reviewing the trial court's order on both a motion to enforce a settlement agreement and a motion for summary judgment, "we apply a *de novo* standard of review and, thus, view the evidence in a light most favorable to the nonmoving party."[1] Bearing this standard of review in mind, well-established principles also guide our inquiry into whether the parties entered into a settlement agreement.[2] Specifically, in order to prevent litigation, "compromises of doubtful

---

[1] *Torres v. Elkin*, 317 Ga. App. 135, 140 (2) (730 SE2d 518) (2012) (footnote omitted); *see Anderson v. Benton*, 295 Ga. App. 851, 852 (673 SE2d 338) (2009); *DeRossett Enters., Inc. v. Gen. Elec. Capital Corp.*, 275 Ga. App. 728, 728 (621 SE2d 755) (2005).

[2] *See Anderson*, 295 Ga. App. at 854 (1).

rights are upheld by general policy."[3] But courts are certainly limited to "those terms upon which the parties themselves have mutually agreed."[4] And apart from such mutual agreement, "no enforceable contract exists between the parties."[5] In fact, settlement agreements must "meet the same requirements of formation and enforceability as other contracts."[6] Accordingly, an answer to an offer will not amount to an acceptance, so as to result in a contract, unless "it is unconditional and identical with the terms of the offer."[7] Indeed, the offer must be accepted unequivocally and without variance of any sort, and "if a purported acceptance of the plaintiff's settlement offer imposes any new conditions, it constitutes a counteroffer rather than an acceptance."[8] Finally, the party asserting the existence of a contract has "the burden of proving its existence and its terms."[9]

---

[3] *Torres*, 317 Ga. App. at 140 (2) (punctuation omitted); *see Herring v. Dunning*, 213 Ga. App. 695, 696 (446 SE2d 199) (1994).

[4] *Herring*, 213 Ga. App. at 696-97 (punctuation omitted).

[5] *Torres*, 317 Ga. App. at 141 (2).

[6] *Id.*

[7] *Id.* (punctuation omitted).

[8] *Id.* (footnote and punctuation omitted).

[9] *Id.*

Importantly, Georgia law holds that an offer may be accepted "either by a promise to do the thing contemplated therein, or by the actual doing of the thing."[10] And if an offer calls for an act, "it can be accepted only by the doing of the act."[11] Here, Arnold, via her attorney's February 14, 2011 letter, offered to settle her bodily-injury claim against Neal for the $100,000 Allstate policy limit and subject to a limited release, which did not deny liability and did not contain any indemnification language other than language pertaining to her Medicaid liens. Allstate, on Neal's behalf, accepted this offer by providing a limited release that adhered to Arnold's specifications and by tendering a check for $100,000. Thus, Neal and Allstate's compliance with the demands of Arnold's offer constituted an acceptance.[12]

Nevertheless, ignoring the language contained in the limited release, Arnold argues that by writing "Full and Final Settlement of any and all claims for bodily injury arising from her loss" on the settlement check,[13] Allstate deviated from the

---

[10] *Herring*, 213 Ga. App. at 699 (punctuation omitted).

[11] *Id.* (punctuation omitted).

[12] *See id.*

[13] Because the complained-of language was used on the settlement *check*, rather than in the controlling settlement *documents*, Arnold's reliance on *Kitchens v. Ezell*, 315 Ga. App. 444, 449 (1) (b) (726 SE2d 461) (2012) (physical precedent only) and

8

conditions of her offer and, in fact, added a new condition or counteroffer that would have precluded her from pursuing other claims had she endorsed the check. But this argument lacks merit. As previously noted, the release that Allstate provided was limited in scope, exactly as Arnold had requested, and "where the terms of a written release are clear and unambiguous, the court will look to the release *alone* to find the intention of the parties."[14] Given that the release explicitly stated that it did not apply to Arnold's claims against any other tortfeasor or insurance carrier, Arnold's assertion that the check precluded such claims is misplaced.[15]

---

*Penn v. Muktar*, 309 Ga. App. 849, 850 (711 SE2d 337) (2011) is misplaced. *Supra* n. 15.

[14] *Carey v. Houston Oral Surgeons, LLC*, 265 Ga. App. 812, 816 (1) (595 SE2d 633) (2004) (emphasis supplied).

[15] *See Williams v. Physicians & Surgeons Cmty. Hosp., Inc.*, 249 Ga. 588, 592 (292 SE2d 705) (1982) ("Unless a party is specifically named or identified in a release, he is presumed not to be covered by the release."); *see also* OCGA § 33-24-41.1 (d) (1) ("The limited release of the settling carrier . . . shall not . . . [b]ar a claimant's recovery against any other tort-feasor or under any other policy of insurance or release any other insurance carrier providing applicable coverage unless specifically provided for in such release . . . ."). *Compare Blitch v. Walker Pharmacy, Inc.*, 295 Ga. App. 347, 349 (671 SE2d 842) (2008) (holding that plaintiff settled its claim against defendant and could not argue otherwise when plaintiff endorsed check that was accompanied by letter stating that check was tendered in "full payment and satisfaction of the settlement"); *Yeager v. Poole Truck Lines, Inc.*, 162 Ga. App. 803, 803 (2) (293 SE2d 64) (1982) (holding that defendant's check, which stated that it was for full and final settlement of any and all claims and which plaintiffs accepted,

Moreover, Arnold's contention that Allstate's inclusion of a lien affidavit with the limited release constituted a counteroffer is likewise without merit. To begin with, based on our review of the record, it appears that Arnold never argued in the trial court that the lien affidavit included with the limited release rendered Allstate's response a counteroffer rather than an acceptance. And it is well established that "[f]airness to the trial court and to the parties demands that legal issues be asserted in the trial court."[16] Consequently, absent special circumstances, "an appellate court need not consider arguments raised for the first time on appeal."[17]

However, pretermitting whether Arnold raised this contention before the trial court, we do not find it persuasive. As previously mentioned, Arnold's attorney's settlement offer in his February 14, 2011 letter explicitly provided that Arnold would "take care of any Medicaid lien as a result of this wreck" and indicated that the release could reference this understanding. In his February 24, 2011 response letter,

constituted a release of plaintiffs' claims *in the absence of any other writing between the parties*) (emphasis supplied).

[16] *Safe Shield Workwear, LLC v. Shubee, Inc.*, 296 Ga. App. 498, 500 (2) (675 SE2d 249) (2009) (punctuation omitted); *see Pfeiffer v. Ga. Dep't of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002).

[17] *Safe Shield Workwear, LLC*, 296 Ga. App. at 501 (2) (punctuation omitted); *see Pfeiffer*, 275 Ga. at 829 (2).

which included the lien affidavit, Allstate's counsel confirmed the agreement that "Medicaid liens will be satisfied, negotiated and/or resolved out of the settlement proceeds." Under these circumstances, Allstate's "proffering the [lien] affidavit and requesting that it be signed was merely an attempt to memorialize this understanding[,]"[18] and, therefore, cannot properly be construed as a counteroffer. Accordingly, the trial court did not err in granting Neal's motion to enforce settlement.

2. Arnold also contends that the trial court erred in granting Neal's motion for summary judgment, but she concedes that this contention is contingent upon her argument that the trial court erred in granting Neal's motion to enforce settlement. Thus, in light of our holding in Division 1, *supra*, we further conclude that the trial court did not err in granting Neal's motion for summary judgment.

*Judgment affirmed. Ellington, C. J., and Phipps, P. J., concur in judgment only.*

---

[18] *Mealer v. Kennedy*, 290 Ga. App. 432, 436 (659 SE2d 809) (2008).

11