**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 21, 2020**

# In the Court of Appeals of Georgia

A20A0780. CLAXTON v. ADAMS.

BROWN, Judge.

In this interlocutory appeal, Ashley Claxton appeals from the trial court's order granting Dale Adams' motion for reconsideration of its previous order enforcing a settlement between Claxton and Adams. Claxton asserts that the trial court erred in granting the motion for reconsideration and in failing to enforce the settlement because: (1) its previous order was final and the motion for reconsideration was untimely; (2) Adams waived arguments that were asserted in his motion for reconsideration for the first time; (3) Adams was estopped from challenging the form of the release because he attempted to cash the settlement check; and (4) the limited liability release did not impermissibly release property damage claims. For the reasons explained below, we affirm.

The record shows that on May 24, 2016, Claxton struck Adams' vehicle while Adams was working in a construction zone; Claxton was charged with serious injury by vehicle, reckless driving, and failure to maintain a lane. In September 2016, Claxton's insurer, Nationwide Affinity Insurance Company of North America ("Nationwide") offered to pay its policy limits of $50,000 to settle Adams' claims in exchange for a general release. On November 2, 2016, Adams filed a complaint against Claxton, asserting that he was permanently injured as a result of the accident and had incurred medical expenses in excess of $585,000. A copy of his complaint was also served upon The Hanover Insurance Company ("Hanover") and Progressive Mountain Insurance Company ("Progressive"), in their capacity as uninsured motorist carriers.

In late November 2016, Nationwide received a time-limited demand letter from Adams' counsel, the details of which will be explained in our analysis of Claxton's claim that the trial court erred by failing to enforce a settlement. On December 19, 2016, counsel for Nationwide hand-delivered a check and other documents aimed at accepting the time-limited settlement demand. On December 28, 2016, Adams' counsel notified Nationwide's counsel that it was rejecting what he characterized as Nationwide's counteroffer. One of the stated reasons was that

Mr. Adams' offer of compromise could not have been more clear in its requirement that Nationwide deliver "a valid **CHECK** *(not draft)*." When the $50,000 instrument was presented to JPMorgan Chase Bank, N.A. ("Chase") for payment, Chase stated that it could not provide cash in exchange for the instrument. Instead, Chase stated that the instrument had to be deposited into an account at Chase or another bank. Chase also refused to exchange the instrument for a check drawn directly against Chase's funds. Upon further probing, Chase disclosed that the account had a limit set by Nationwide that prevented cashing any instrument in an amount higher than the pre-set limit. Since $50,000 was higher than the limit that was pre-set by Nationwide, Chase stated that it could not cash the instrument. Since the instrument exceeded the pre-set limit, it would have to be presented to Nationwide for approval, a process that Chase stated could take as long as nine (9) business days. Furthermore, Chase could not confirm that the instrument was, in fact, a check rather than a draft, but, since Chase would not cash the instrument, it was clear that the instrument was not a *valid* check.

. . .

Since this firm could not cash the instrument or exchange it for a guaranteed check drawn against Chase's own funds, this firm could not immediately distribute funds to Mr. Adams. Mr. Adams was not willing to wait more than nine (9) business days for payment when he was accepting mere pennies compared to the true value of his case, and, rather than wait, he is accepting alternative arrangements to handle his financial situation. Nationwide had a full and fair opportunity to resolve

3

this case, and Nationwide squandered that opportunity by intentionally sending an instrument drawn against a restricted account.

The letter also rejected the "counteroffer" because "Nationwide also attempted to impose additional terms that would have invalidated part of the requirements of Mr. Adams' offer of compromise." It stated that the release provided by Nationwide was "under seal" and would have created a presumption of sufficiency of the consideration even though the $50,000 instrument could not be exchanged for cash upon demand.

Claxton filed a motion to enforce the settlement, and on February 27, 2018, the trial court granted the motion. Adams obtained a certificate of immediate review from the trial court, and this Court denied Adams' application for an interlocutory appeal on April 18, 2018. On December 12, 2018, Adams filed a motion asking the trial court to reconsider its decision to enforce the settlement, or in the alternative, to enter a final judgment so that he could file an appeal from the order enforcing the settlement. On June 5, 2019, the trial court granted Adams' motion for reconsideration because the release prepared by Nationwide constituted a counteroffer as it sought to release "'any and all claims' rather than just personal

4

injury claims." This Court subsequently granted Claxton's application for interlocutory appeal.

1. Claxton contends that the trial court's initial order granting her motion to enforce the settlement became final when the last remaining co-defendant was dismissed from the case. According to Claxton, this rendered Adams' motion for reconsideration, filed more than 30 days later, untimely. We disagree.

Over a decade ago, the Supreme Court of Georgia held "[i]t is clear that, notwithstanding the trial court's grant of a motion to enforce a settlement, a case is not at an end until such time as the agreement has 'been made the judgment of the court, thereby terminating the litigation.' [Cit.]" *Underwood v. Underwood*, 282 Ga. 643, 644 (1) (651 SE2d 736) (2007). Accordingly, "the 30-day period for filing a notice of appeal begins to run only when the trial court explicitly enters final judgment, rather than when the trial court grants the motion to enforce the settlement agreement." *Torres v. Elkin*, 317 Ga. App. 135, 139 (1) (730 SE2d 518) (2012). In this case, the trial court's February 27, 2018 order granting Claxton's motion to enforce the settlement did nothing more than grant a motion in the pending litigation; it therefore cannot be considered a final judgment. See *Thomas v. Sheppard*, 349 Ga. App. 871, 872 (827 SE2d 60) (2019). "[T]he rule against amending or revoking a

judgment after the expiration of the term in which it was entered has no application to interlocutory rulings so long as the case continues — from term to term, until final judgment." *Union Circulation Co. v. Trust Co. Bank*, 143 Ga. App. 715, 718 (1) (240 SE2d 100) (1977), rev'd on other grounds, *Trust Co. Bank v. Union Circulation Co.*, 241 Ga. 343, 345 (245 SE2d 297) (1978) (reversing division 2), vacated in part, *Union Circulation Co. v. Trust Co. Bank*, 146 Ga. App. 612 (247 SE2d 197) (1978) (reaffirming division 1 and vacating division 2 of original opinion). In civil cases, an interlocutory ruling does not pass from the control of the court at the end of the term if the cause remains pending." (Citation and punctuation omitted.) *Moon v. State*, 287 Ga. 304 (696 SE2d 55) (2010).

Contrary to Claxton's assertions on appeal, the provisions of OCGA § 9-11-54 (b) and the trial court's subsequent order dropping Hanover as a party in the case[1] did not render its order granting the motion to enforce the settlement agreement "final by operation of law." OCGA § 9-11-54 (b) states that a trial court

> may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there

---

[1] We note that the trial court's order dropping Hanover states: "This case *will continue* under the style, *Dale Adams v. Ashley Claxton*, State Court of Fulton County, Civil Action File No. 16EV005027." (Emphasis supplied.)

is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination . . . the order or other form of decision is subject to revision at any time before the *entry of judgment* adjudicating all the claims and the rights and liabilities of all the parties.

(Emphasis supplied.) As there was no "entry of judgment" regarding the rights and liabilities of Claxton and Adams in connection with the settlement, OCGA § 9-11-54 does not render the trial court's order final by operation of law. As none of the opinions upon which Claxton relies addressed the finality of an order enforcing a settlement, they are distinguishable and provide no guidance here. See *O'Dell v. Mahoney*, 324 Ga. App. 360, 361 (1) (750 SE2d 689) (2013) (addressing right to appeal orders entered prior to court's entry of final judgment following undisputed settlement); *Horesh v. DeKinder*, 295 Ga. App. 826, 828 (1) (673 SE2d 311) (2009) (addressing trial court's jurisdiction to consider motion for attorney fees after trial court granted motion for summary judgment); *Holiday Inns v. Page*, 151 Ga. App. 55, 56-57 (2) (258 SE2d 909) (1979) (addressing finality of voluntary dismissal by plaintiff without order of court),[2] rev'd by *Page v. Holiday Inns*, 245 Ga. 12 (262

_____

[2] This opinion was cited by Claxton and has no precedential value as it was reversed by the Supreme Court of Georgia.

7

SE2d 783) (1980), vacated by *Holiday Inns v. Page*, 153 Ga. App. 357 (266 SE2d 809) (1980).

For the above-stated reasons, we reject Claxton's assertion that Adams' motion for reconsideration was untimely.

2. Claxton contends that the trial court erred by considering objections to enforcement of the settlement raised by Adams for the first time in his motion for reconsideration. We disagree.

"We will uphold a trial court's decision granting or denying a motion for reconsideration absent an abuse of discretion." (Citation and punctuation omitted.) *Bush v. Eichholz*, 352 Ga. App. 465, 477 (5) (833 SE2d 280) (2019). "Whether to grant a motion for reconsideration after ruling on an issue lies within the sound discretion of the trial court." *Cochran v. Emory University*, 251 Ga. App. 737, 739 (2) (555 SE2d 96) (2001). "Whether to permit a party to raise a new argument on motion for reconsideration filed after judgment is entered lies within the discretion of the trial court." *Neely v. City of Riverdale*, 298 Ga. App. 884, 888 (3) (681 SE2d 677) (2009).

The cases upon which Claxton relies do not persuade us to conclude that the trial court abused its discretion by considering additional arguments regarding

8

whether the settlement agreement could be enforced; this is not a case in which new theories and facts are asserted for the first time on or following an appeal. See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("absent special circumstances, an appellate court need not consider arguments raised for the first time on appeal"); *Turner v. Harper*, 234 Ga. 891 (218 SE2d 621) (1975) ("No party, plaintiff or defendant, is permitted to stand his case before the court on some of its legs, and if it falls, set it up again on the rest in a *subsequent proceeding*, and thus evade the bar of the former judgment.") (citation and punctuation omitted; emphasis supplied). We reject Claxton's contention that an *evidentiary* rule regarding silence and assent to terms of an agreement should be applied to limit a trial court's *discretion* to hear new arguments in a motion for reconsideration. See *St. Mary's Hosp. v. Cohen*, 216 Ga. App. 761, 762-763 (1) (456 SE2d 79) (1995) ("'Acquiescence or silence, when the circumstances require an answer, a denial, or other conduct, may amount to an admission.' OCGA § 24-3-36.").

3. Claxton contends that the trial court should have denied the motion for reconsideration and enforced the settlement because Adams "should be estopped from challenging the form of the [release] because he attempted to cash the settlement check." We disagree.

As this is an action at law, we must determine whether equitable estoppel precludes Adams from challenging the form of the release submitted by Claxton's counsel. See *Hasty v. Castleberry*, 293 Ga. 727, 729 (1) (749 SE2d 676) (2013); *Crystal Blue Granite Quarries v. McLanahan*, 261 Ga. 267, 268-269 (3) (404 SE2d 266) (1991) (finding genuine issue of fact as to whether party equitably estopped from denying existence of contract). "In order for an equitable estoppel to arise, there shall generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his or her injury." OCGA § 24-14-29. If a party fails to demonstrate any harm or disadvantage from the other party's conduct or declarations, his claim for equitable estoppel fails. Id.; *Blackburn v. Blackburn*, 168 Ga. App. 66, 73 (2) (308 SE2d 193) (1983). "[T]he party claiming estoppel must have relied and acted upon declarations or conduct of the other party. . . ." *Tybrisa Co. v. Tybeeland, Inc.*, 220 Ga. 442, 446 (139 SE2d 302) (1964). "[I]njury is essential for an equitable estoppel." *Blackburn*, 168 Ga. App. at 73 (2). In this case, Claxton submitted no evidence showing that she relied and acted upon the presentment of the check by Adams' counsel. We therefore find that equitable estoppel cannot be used to bind Adams to the terms of the limited release.

10

4. Claxton contends that the trial court erred by failing to enforce the settlement because the release did not exceed the scope of Adams' offer by releasing property damage claims in addition to bodily injury. We disagree.

"In reviewing the trial court's order on both a motion to enforce a settlement agreement and a motion for summary judgment, we apply a *de novo* standard of review and, thus, view the evidence in a light most favorable to the nonmoving party." (Punctuation omitted; italic in original.) *Torres*, 317 Ga. App. at 140. So viewed, the record shows that Adams' offer letter included the following relevant provisions:

[S]ince there is at least a possibility that underinsured motorist coverage may be available to Mr. Adams, we cannot offer a full and final release at this time. Instead, we require payment of Nationwide's $50,000 liability limits in a form that will not prejudice Mr. Adams' rights to seek recovery from any other insurance coverage that may be available. Accordingly, any release relating to the payment of the policy limits for this claim must be limited. Please be aware that the ***only*** reasons we are willing to compromise this claim for $50,000 as described herein is because you have represented to us that Ms. Claxton has a total of only $50,000 of liability insurance coverage available to her for the bodily injury claims being made by Mr. Adams. In an effort to compromise this case now and allow Nationwide an opportunity to provide its insured

11

with the most protection possible, we hereby offer to compromise this case pursuant to the terms of this letter.

. . .

[A] *CHECK* for your insured's individual bodily injury policy limits of $50,000 must be *RECEIVED* by this firm no later than 5:00 p.m. EST on Monday, December 19, 2016.

. . .

This offer of compromise relates to the claim for personal injuries that Dale Adams suffered as a result of [Claxton]'s negligence

. . .

Nationwide will only be released with respect to the bodily injury coverage of the subject policy; Nationwide will not be released with respect to any other policies or coverages not identified herein; and any request or requirement for a general release or a full and final release of Nationwide from any and all claims will be a counteroffer and rejection of this offer of compromise.

. . .

[P]lease be aware that Nationwide will only be released with respect to the bodily injury coverage of the subject insurance policy and that Nationwide will not be released with respect to any other policies or coverages not identified herein.

12

(Footnotes omitted; emphasis in original.)

Adams argued, and the trial court accepted, that the one-page release submitted by Nationwide failed to satisfy the requirements of the offer because it released Claxton for "any and all claims . . . of whatsoever kind and nature, specifically including but not limited to . . . all damages to the Undersigned . . . on the account of or resulting from the accident. . . ." As this release would include property damage in addition to personal injury claims, the trial court concluded that "Nationwide made a counteroffer that rejected Plaintiff's Offer."

Claxton argues that the trial court erred because Adams' "offer did not specify that Claxton would only be released regarding bodily injury" and that the submitted release would not have precluded Adams from submitting a property damage claim to Nationwide because it only released Claxton "to the extent of any other insurance coverage which may be available to cover the claims of the undersigned against the Releasee. . . ." We disagree with the first contention because the offer of compromise letter stated that the offer related to Adams' claim for personal injuries.

The second contention also fails to persuade us as the submitted release would have released any property damage claims in excess of Claxton's insurance coverage and Adams' offer made no reference to a release of claims other than personal injury.

13

The fact that the release would not preclude Adams from presenting a property damage claim to Nationwide does not undo its effect of asking Adams to release property damage claims that might be in excess of the policy limits or not covered by the policy. We also find no merit in Claxton's contention that OCGA § 33-24-41.1, governing the option for settling parties in motor vehicle accident cases to enter into a limited release when two or more insurance carriers provide coverage, required her to include language releasing her from any and all claims "except to the extent other insurance coverage is available which covers such claim. . . ." OCGA § 33-24-41.1 (b) (2). As Adams points out in his brief, use of a release under OCGA § 33-24-41.1 is optional, and his offer letter never indicated "that the release should be or could be issued pursuant to [OCGA § 33-24-41.1]." See *Kitchens v. Ezell*, 315 Ga. App. 444, 450-451 (1) (b) (726 SE2d 461) (2012) (physical precedent only) (defendant could not accept offer to settle bodily injury claims by providing a release of "any and all claims" under OCGA § 33-24-41.1 (b)). Accordingly, we conclude that Claxton's "purported acceptance of the plaintiff's settlement offer impose[d a] new condition[ ], [and] constitute[d] a counteroffer rather than an acceptance." *Torres*, 317 Ga. App. at 141 (2).

14

The trial court did not err in granting Adams' motion for reconsideration and in refusing to enforce the purported settlement. See *Duenas v. Cook*, 347 Ga. App. 436, 442 (818 SE2d 629) (2018) (holding Nationwide did not unequivocally accept material term in settlement offer to release "personal injury/bodily injury claims" by providing a release of "any and all claims"); *Penn v. Muktar*, 309 Ga. App. 849, 850 (711 SE2d 337) (2011) (holding same).

*Judgment affirmed. Dillard, P. J., and Rickman, J., concur*.