66506, 66507. SOUTHERN TRUST INSURANCE COMPANY v. FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF SUMMERVILLE; and vice versa.

SHULMAN, Chief Judge.

Southern Trust Insurance Company ("Southern Trust") appeals from the grant of summary judgment in favor of First Federal

Savings & Loan Association of Summerville, Georgia ("First Federal"), holding that notice of cancellation of a homeowners' insurance policy issued by Southern Trust covering property on which First Federal held a mortgage was ineffective because of improper notice. First Federal cross appeals from the grant of summary judgment in favor of Southern Trust on the issue of First Federal's entitlement to bad faith penalties and attorney fees.

1. The insurance policy was issued by Southern Trust on July 19, 1979, to Sam and Cheryl Hyatt, with First Federal listed thereon as first mortgagee of the insured property. On April 25, 1980, a written notice of cancellation was mailed by Southern Trust to the Hyatts to be effective May 5, 1980, for nonpayment of premiums. On May 15, 1980, Southern Trust mailed written notice of cancellation to First Federal as lienholder to be effective at 12:00 noon on May 25, 1980. This notice was sent by first class mail to the address of First Federal shown on the policy and, although proof of such mailing was properly established, apparently it was never received. On June 10, 1980, the insured dwelling was totally destroyed by fire. On June 13, 1980, First Federal made demand upon Southern Trust for $32,052.84, the balance due on the indebtedness secured by the destroyed dwelling, and also gave notice of intent to seek penalties and attorney fees pursuant to OCGA § 33-4-6 (Code Ann. § 56-1206). When Southern Trust denied the claim, contending that the insurance policy had been cancelled as provided by OCGA § 33-24-44 (Code Ann. § 56-2430), First Federal filed the instant suit.

OCGA § 33-24-44 (Code Ann. § 56-2430), as pertinent here, provides that when a policy of insurance is cancelled "for failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums for the policy, . . . the notice requirements of this Code section may be satisfied by giving *not less than ten days' written notice* to the insured and lienholder, where applicable . . ." (Emphasis supplied.) Such notice may be delivered in person, or "dispatched by at least first class mail to the last address of record . . ." Id.

At the hearing on First Federal's motion for partial summary judgment as to liability, the trial court utilized the method set out in CPA § 6 (a) (OCGA § 9-11-6 (a) (Code Ann. § 81A-106)) as a guide in computing the ten-day notice period, under which "the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included . . ." The judge also recognized that " '[g]enerally, the word "day," when not qualified, means a calendar or civil day consisting of 24 hours from midnight to midnight. [Cits.]' " *J. B. H. v.*

*State of Ga.,* 139 Ga. App. 199, 202 (228 SE2d 189). Under these criteria "not less than ten days" means not less than ten full 24-hour periods between one midnight and the next, and the notice sent by Southern Trust to First Federal was necessarily defective. In order for cancellation to take effect at *noon* on May 25, 1980, notice must have been mailed prior to midnight on May 14, since the date on which it is mailed cannot be counted as one of the statutorily required ten days under CPA § 6 (a) (OCGA § 9-11-6 (a) (Code Ann. § 81A-106)).

Southern Trust argues that the method of computing time is controlled by OCGA § 1-3-1 (d) (incorporating former Code Ann. §§ 102-102, 102-103), whose rules expressly "govern the construction of all statutes . . ." One of those rules states: "Computation of Time. Except as otherwise provided in Code Section 9-11-6 [Code Ann. § 81A-106], when a number of days is prescribed for the exercise of any privilege or the discharge of any duty, only the first or last day shall be counted . . ." OCGA § 1-3-1 (d)(3) (Code Ann. §§ 102-102, 102-103). If the first rather than the last 24-hour day is counted here, the fact that the cancellation was to take effect at noon on the last, uncounted day would not cut into the required ten-day period. Southern Trust also asserts that the CPA rule (OCGA § 9-11-6 (a) (Code Ann. § 81A-106)) cannot be used since this court has held "that the phrase 'applicable statute' refers directly only to statutes applicable to proceedings had after the commencement of the action, and hence would not apply expressly to a statute of limitation." *Zeeman Mfg. Co. v. L. R. Sams Co.,* 123 Ga. App. 99, 101 (1) (179 SE2d 552). We agree.

When first construing CPA § 6 (a), this court reviewed the federal authorities' consideration of what an "applicable statute" was in connection with various federal statutes. Quoting from 2 Moore's Federal Practice in regard to federal and other state cases, it was noted that " 'Rule 6 (a) is, of course, a procedural rule that governs the computation of time for doing some act *in the course of the proceeding.* It could not be said to apply expressly to a statute of limitations. Thus assume that the statutory period expires on a Sunday and the action is not commenced until the following day. The rule, while governing the computations of time thereafter to be made, could not apply directly to determine the computation of a period of time (here the statutory period) that is anterior to the time when the Federal Rules (including, of course Rule 6) begin to apply.' [Cit.] . . . 'Rule 6 (a) is a rule of procedure relating to acts done or proceedings had after the commencement of the action and to any statutes expressly applicable to such proceedings. It is not intended to modify and change existing statutes of limitation.' [Cit.]" *Davis v. U. S. F. &*

*G. Co.,* 119 Ga. App. 374, 375 (167 SE2d 214).

While the ten-day notice period required by OCGA § 33-24-44 (Code Ann. § 56-2430) for cancellation of a policy of insurance is not a statute of limitation, it clearly involves the computation of a period of time that is anterior to the commencement of an action. Also, both OCGA § 33-24-44 (Code Ann. § 56-2430) (Ga. L. 1960, p. 609) and the predecessor statutes to OCGA § 1-3-1 (Code Ann. § 102-102), dating back to the Code of 1863, were in existence prior to the time the CPA was adopted in Georgia (Ga. L. 1966, p. 609). We therefore conclude that the ten-day notice period cannot be computed by the CPA rule exclusively governing acts done in the course of a court proceeding, and that the trial court erred in ruling that OCGA § 33-24-44 (Code Ann. § 56-2430) was an "applicable statute" as contemplated thereunder. Since OCGA § 1-3-1 (d)(3) (Code Ann. § 102-102) expressly provides for computation of time "[e]xcept as otherwise provided in Code Section 9-11-6 [Code Ann. § 81A-106] ...," it follows that Southern Trust's motion for summary judgment on the issue of cancellation should have been granted.

2. Since Southern Trust's interpretation of the notice statute has been held correct, it follows that Southern Trust could not be liable for bad faith penalties. The trial court was correct in granting judgment for Southern Trust on that issue.

*Judgment reversed in the main appeal and affirmed in the cross appeal. McMurray, P. J., and Birdsong, J., concur.*

DECIDED OCTOBER 5, 1983 —
REHEARING DENIED NOVEMBER 18, 1983 —

*F. Gregory Melton, R. Leslie Waycaster, Jr.,* for appellant.
*William U. Hyden, Jr.,* for appellee.