**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and PIPKIN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 28, 2023

# In the Court of Appeals of Georgia

A23A0394. PIERCE v. BANKS et al.

PIPKIN, Judge.

Appellant Aaron Pierce was involved in a motor-vehicle accident with Appellees Kyndyl Banks and Octavius Avery Smith, and Appellant ultimately sued Appellees for injuries arising out of that incident. Appellees answered, asserting, among other things, that the parties had reached a pre-suit settlement on the claim. In response, Appellant asserted that there was no such settlement and moved for summary judgment on the question; Appellees opposed the motion for summary judgment and moved to enforce settlement. The trial court denied Appellant's motion for partial summary judgment and granted Appellees' motion to enforce settlement;

Appellant now seeks review of those decisions. For the reasons that follow, we reverse the judgment of the trial court and remand for further proceedings.[1]

1. "In reviewing the trial court's order on both a motion to enforce a settlement agreement and a motion for summary judgment, we apply a de novo standard of review." (Footnote and emphasis omitted.) *Torres v. Elkin*, 317 Ga. App. 135, 140 (2) (730 SE2d 518) (2012). Here, the central question relevant to both Appellant's motion for summary judgment and Appellees' motion to enforce settlement is whether there exists a binding pre-suit settlement agreement between the parties pursuant to OCGA § 9-11-67.1 (2021).[2] The facts attendant to this question are undisputed.

Following the February 2021 accident, Appellant, through counsel, made a written pre-suit offer to Trexis One Insurance Corporation, Appellees' insurer, to settle Appellant's personal-injury claim. The detailed offer letter required the payment of $25,000 – the bodily injury coverage limit – and noted that "Trexis must accept" the terms of the offer in writing within 31 days. The offer letter further

---

[1] We thank the Georgia Defense Lawyers Association for their amicus curiae brief.

[2] The current version of OCGA § 9-11-67.1 does not apply to this matter because the incident occurred before July 1, 2021. See OCGA § 9-11-67.1 (h); *de Paz v.de Pineda*, 361 Ga. App. 293, 294 (1) (864 SE2d 134) (2021).

2

dictated that any payment requiring the name of a payee must be made out to "Aaron Pierce and Brooks Injury Law, LLC" and that, "[a]s an act necessary to accept this offer," payment had to "be received 15 days after Trexis' written acceptance of th[e] offer." Also included in the offer letter was the following statement: "As an act necessary to accept this offer, the settlement payment and all other documents sent by Trexis must not include any terms, conditions, descriptions, *expirations*, or restrictions that are not expressly permitted in this offer." (Emphasis supplied.) Finally, the offer letter cautioned that

> [m]ultiple cases demonstrate the hazards of attempting to negotiate agreements without terms and conditions for acceptance being clear, and we want to be clear that this offer must be accepted exactly as stated and that any variance at all from any terms or conditions of acceptance or any variance at all from the quoted language above, even if accidental, will be a rejection of this offer.
> Just days later, counsel for Trexis responded that the insurer "ha[d] authorized

[her] to accept" Appellant's offer; the letter was accompanied by "the settlement check and limited release." As pertinent here, the settlement check was made out to "Aaron Pierce and Brooks Injury Law LLC" and included a notation that it was "void after 180 days." In subsequent correspondence, Appellant, through counsel, explained to Trexis that "its purported acceptance was not identical to the offer" and that Appellants were rejecting Trexis' counteroffer. Appellant subsequently filed this action against Appellees for negligence and negligence per se, alleging that his

3

medical expenses totaled nearly one-million dollars. In their answers, Appellees asserted, among other things, that "[t]here ha[d] been an accord and satisfaction of [Appellant's] claim[s]."

In his subsequent motion for summary judgment on that defense, Appellant claimed that there was no settlement agreement between the parties and, thus, that the defense failed as a matter of law. As an initial matter, Appellant asserted that counsel for Trexis had only indicated that she was *authorized* to accept the offer, not that she was actually accepting the offer. As to the terms of the offer, Appellant argued that Trexis had failed to supply the settlement check 15 days *after* their written acceptance as articulated in the offer, that the settlement check itself violated the terms of the offer by including a provision that it would be void after 180 days, and, finally, that Trexis had failed to properly name the payee on the settlement check by failing to include a necessary comma.

In response, Appellees argued that they had complied with the five material

4

statutory terms required by OCGA § 9-11-67.1 (2021),[3] and that their acceptance did not vary from the terms of Appellant's offer. Specifically, Appellees argued that it was "utterly absurd" that Appellant was complaining that he had received the settlement check earlier than the required 15 days, that the expiration of the check was dictated by law, and that Appellant had failed to demonstrate that the missing comma was material to whether the check was negotiable. In his reply, Appellant pointed out that Appellees had necessarily admitted that its acceptance was not identical to his offer.

Following a hearing, the trial court agreed with Appellees that they had complied with the material terms of OCGA § 9-11-67.1 (2021). The trial court also

---

[3] OCGA § 9-11-67.1 (a) (2021) identifies the following "material terms" that must be included in a pre-suit "offer to settle a tort claim for personal injury [or] bodily injury . . . arising from the use of a motor vehicle":

(1) The time period within which such offer must be accepted, which shall be not less than 30 days from receipt of the offer;

(2) Amount of monetary payment;

(3) The party or parties the claimant or claimants will release if such offer is accepted;

(4) The type of release, if any, the claimant or claimants will provide to each releasee; and

(5) The claims to be released.

5

sided with Appellees on whether they had complied with other terms of Appellant's offer. The trial court first concluded that, because the offer letter "utilized the passive voice" -- by saying that "payment must be received 15 days after Trexis' written acceptance of this offer" – the offer merely required that Appellant *receive* the settlement 15 days after acceptance rather than requiring Trexis to *deliver* the settlement 15 days after acceptance. In short, the trial court concluded that this condition imposed no duty on Trexis and reasoned that because Appellant "received payment at the time it received Trexis' written acceptance," Appellant "therefore . . . also received payment 15 days after Trexis' written acceptance."

In the order, the trial court also explained that the expiration notation on the check did not constitute a variance from the offer because, the trial court concluded, OCGA § 11-4-404 does not require a bank to pay on a check that is presented more than six months after its date. Finally, with respect to the missing comma, the trial court concluded that it did not change the payee or alter the right to payment; in fact, the trial court concluded that a comma "is not language" and, thus, its absence did not constitute a "variance" in the language required by the offer. Appellant now challenges these conclusions on appeal.

2. As we recently discussed,

> the version of OCGA § 9-11-67.1 in effect at the time [Appellant] made h[is] settlement offer in this case was enacted against the backdrop of a large body of law on contract formation generally and settlement formation specifically. As part of that existing law, settlement agreements must meet the same requirements of formation and enforceability as other contracts. There is no enforceable settlement between the parties absent mutual agreement between them. That existing law includes the fundamental principle that an offeror is the master of his or her offer and free to set the terms thereof. An offeror may include terms of acceptance establishing a unilateral contract, whereby an offer calls for acceptance by an act rather than by communication. If an offer calls for an act, it can be accepted only by the doing of the act. *If the recipient of a pre-suit offer fails to perform the act required to accept the offer, then the parties do not have a meeting of the minds.*

(Citations and punctuation omitted; emphasis supplied.) *de Paz v. de Pineda*, 361 Ga. App. 293, 295 (2) (864 SE2d 134) (2021). Here, it is patent that Appellees' purported acceptance "failed to comply with the requirements of the offer as to the performance to be rendered." Id. Indeed, the trial court did not conclude that Appellees' performance mirrored the terms of the offer; instead, the order merely explains how or why Appellees may have failed in that endeavor. Likewise, Appellees claim on appeal only that they satisfied the *material* conditions of Appellant's pre-suit demands and assert that Appellant is attempting to enforce "immaterial and inconsequential details." In short, there can be no dispute that Appellees did not comply with one or more "of the precise terms of acceptance of the settlement offer."

7

Id. at 296. Appellees maintain, however, that this should not bar the conclusion that the parties have a contract here.

(a) Relying on general principles of contract law, Appellees argue that a contract is created when parties "agree on the material terms which define their rights and obligations" and that parties need not "necessarily agree on non-material matters for a contract to form." While this may be typically true of bilateral contracts – in which parties create a contract by expressing their mutual intent to be bound, see *Jackson Elec. Membership Corp. v. Georgia Power Co.*, 257 Ga. 772, 773-774 (1) (364 SE2d 556) (1988) – the type of contract at issue here is "a unilateral contract, whereby an offer calls for acceptance by act rather than by communication[.]" *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848 (1) (a) (797 SE2d 814) (2017). "And if an offer calls for an act, it can be accepted only by the doing of the act." (Footnote and punctuation omitted.) *Barnes v. Martin-Price*, 353 Ga. App. 621, 624 (1) (838 SE2d 916) (2020). The acceptance by act must be "identical" and "without variance of any sort." (Citations and punctuation omitted.) Id. See also *Wright v. Nelson*, 358 Ga. App. 871, 874 (856 SE2d 421) (2021); *Duenas v. Cook*, 347 Ga. App. 436, 441 (818 SE2d 629) (2018). "An offeree's failure to comply with the precise terms of an offer is generally fatal to the formation of a valid contract." (Citations omitted.) *de Paz*,

8

361 Ga. App. at 295 (2). Thus, Appellees' argument that the parties need not agree on "non-material" matters lacks merit.

(b) Appellees next assert that Appellant's timing requirement failed to comport with OCGA § 9-11-67.1 (g) (2021), which states as follows: "Nothing in this Code section shall prohibit a party making an offer to settle from requiring payment *within a specified period*; provided, however, that such *period* shall be not less than ten days after the written acceptance of the offer to settle." (Emphasis supplied). According to Appellee, this provision does not allow an offeror to demand payment on a specified day. This argument is unavailing.

As the Georgia Supreme Court has explained, this provision "shows that prompt payment may be a term of settlement in a Pre-Suit Offer, *as long as the offeror gives the recipient of the offer at least 10 days from the time of written acceptance to make the payment*." (Emphasis supplied). *Woodard*, 300 Ga. at 855 (2) (b). Here, there can be no dispute that Appellant's offer complied with this requirement and afforded Appellees at least 10 days from the date of written acceptance to make payment. Appellees contend, however, that demanding payment on "15th day after acceptance" is not the same as "requiring payment within a specified period." But, other than that 10-day time frame, OCGA § 9-11-67.1 (g) does not prescribe a "specified period" and, absent such a mandate, an offeror remains free

9

to set their own terms. *Woodard*, 300 Ga. at 855 (2). In any event, a day *is* a period of time – it is a span of 24 hours, see, e.g., *So. Trust Ins. Co. v. Fist Fed. S. & L. Assn. Of Summerville*, 168 Ga. App. 899, 900-901 (1) (310 SE2d 712) – a fact Appellees do not speak to.

Instead, Appellees merely argue that permitting an offeror to identify a specific day on which payment is due is "absurd," and they present this Court with a parade of horribles that will supposedly flow from permitting such a demand. While Appellees are correct that this Court is bound to reject interpretations and applications of statutes that result in absurd or unintended consequences, nothing Appellees have argued on appeal suggests that permitting an offeror to require payment on a specific date is an absurd or unreasonable construction of OCGA § 9-11-67.1 (g). Indeed, as we have said before, "[i]f a [party] fails to deliver payment in the manner specified in the offer, then [that party] did not accept the offer." *de Paz*, 361 Ga. App. at 295-296 (2).[4]

(c) Appellees also claim that it "is blatantly not true" that Trexis added a restriction on the settlement check. According to Appellees, "Trexis did not add any

---

[4] We are not convinced that Appellant's use of the word "received" instead of "delivered" changes the outcome here; in fact, this argument is unsupported by any citation to legal authority or meaningful linguistic analysis.

restricting language to the check and specifically did not add 'void after 180 days' to the check." Instead, Appellees say, their insurer caused their bank to issue a check, and it was *the bank* who added its "standard language" to the instrument. Appellees assert that "[b]ank checks . . . have an expiration date" under OCGA § 11-4-404[5] and that "[a] bank check with a notification that it is 'void after 180 days' is the same as a bank check without [such] notification."

As an initial matter, nothing before us reflects that the factual assertions underpinning this argument -- namely that the bank issued the check, that the bank added the language to the instrument, or that the language was standard -- are supported by evidence included in the record or presented to the trial court; indeed, the only record cite supporting this argument is to a copy of the settlement check. In any event, turning to the substance of this argument, Appellees read far too much into OCGA § 11-4-404. The plain language of that provision does not dictate, as Appellees assert, that a check is automatically void after 180 days; instead, that provision merely provides that a bank *is under no obligation* to pay a check that is presented 180 days after its date but that it may do so in good faith. See id. Such a

_____

[5] OCGA § 11-4-404 states as follows: "A bank is under no obligation to a customer having a checking account to pay a check, other than a certified check, which is presented more than six months after its date, but it may charge its customer's account for a payment made thereafter in good faith."

11

reading is confirmed by the commentary to the Uniform Commercial Code ("UCC"),[6] which explains that there are instances in which a bank would recognize that a payor would actively seek to have such a check paid.[7] See also Comment to UCC § 4-404 (noting that a bank "is given the option to pay [after the six-month period] because it may be in a position to know, as in the case of dividend checks, that the drawer wants payment made"). In short, Appellees' reliance on OCGA § 11-4-404 is unpersuasive; the statute does not adequately account for the disparity between Appellant's offer and the subsequent settlement check. Finally, as they acknowledge on appeal, Appellees could have chosen a number of other means to provide payment to Appellant, see OCGA § 9-11-67.1 (f) (2021),[8] yet they elected a payment method

---

[6] "In order to determine the meaning and purpose behind the enactment of a Georgia Commercial Code provision that is taken verbatim from the UCC, we turn to the UCC Official Comments for assistance." (Citation and punctuation omitted.) *Coleman v. DaimlerChrysler Svcs. of North America, LLC*, 276 Ga. App. 336, 339 n.3 (623 SE2d 189) (2005).

[7] Appellees have not addressed whether their bank could have issued the check without the expiration language; further, Appellees do not address the portion of OCGA § 11-4-404 that contemplates checks that are not subject to that 180-day provision.

[8] OCGA § 9-11-67.1 (f) identifies a number of ways in which a pre-suit payment may be made, including cash, money order, wire transfer, a cashier's check, a draft or bank check, or electronic funds transfer.

that, according to their arguments on appeal, could not have satisfied the terms of the offer.

Where, like here, "the recipient of a pre-suit offer fails to perform the act required to accept the offer, then the parties do not have a meeting of the minds." *de Paz*, 361 Ga. App. at 295 (2). Instead, the purported acceptance of the offer is a counteroffer rather than an acceptance, and no contract is formed. See *White v. Creek*, 360 Ga. App. 557, 563-564 (859 SE2d 104) (2021). Accordingly, there was no formation of a settlement agreement here, and the trial court erred when it concluded otherwise. For these reasons, the judgment of the trial court are reversed.[9]

*Judgment reversed. Rickman, C. J., and Dillard, P. J., concur fully and specially.*

---

[9] Given our conclusions above, we need not address the other two alleged deficiencies with Appellees' acceptance of Appellant's offer, namely that counsel for Trexis merely announced that a settlement was "authorized" rather than actually accepting the offer and that the missing comma invalidated the acceptance.

A23A0394. PIERCE v. BANKS et al.

DILLARD, Presiding Judge, concurring fully and specially.

As the Supreme Court of Georgia has well established, "[t]here is no enforceable settlement between parties absent mutual agreement between them."[1] And to that end, an answer to an offer will not amount to an acceptance, resulting in a contract, unless it is "unconditional and identical with the terms of the offer."[2] Indeed, to constitute an agreement, the offer "must be accepted unequivocally and without

---

[1] *Grange v. Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 852 (1) (a) (797 SE2d 814) (2017); *accord Torres v. Elkin*, 317 Ga. App. 135, 141 (2) (730 SE2d 518) (2012).

[2] *Woodard*, 300 Ga. at 852 (1) (a) (punctuation omitted); *accord Frickey v. Jones*, 280 Ga. 573, 574 (630 SE2d 374) (2006).

variance of any sort."[3] But these requirements at times can be a trap for the unwary, leading us to caution parties to avoid crossing the line from vigorous advocacy to gamesmanship.[4] And at first glance, Pierce's requirement that payment had to "be received 15 days after Trexis' written acceptance of th[e] offer[,]" followed by his rejection when that payment was actually received simultaneously with the purported acceptance may appear—to those unfamiliar with the record—to have crossed that line. Nevertheless, as Pierce thoroughly explains in his brief, the specific time for payment in his offer was required for him to comply with the terms of his own health insurance and those of the Medical Benefits Reimbursement Statute.[5] Accordingly, while cautioning parties against gamesmanship is laudable, the difference between cageyness for its own sake and detail-oriented advocacy is often in the eye of the beholder. It is important to remember, then, that an offeror's freedom to set the terms

---

[3] *Woodard*, 300 Ga. at 852 (1) (a) (punctuation omitted); *accord Frickey*, 280 Ga. at 574.

[4] *See Resurgens, P.C. v. Elliott*, 301 Ga. 589, 599 (2) (b) n. 10 (800 SE2d 580) (2017) (cautioning that candor and cooperation, as opposed to "gotcha" moments and gamesmanship, should be encouraged between litigating parties).

[5] OCGA § 33-24-56.1 (g) (providing that notice of settlement to the injury victim's health insurer "shall be provided no later than ten days prior to the consummation of any settlement . . . .").

2

of the offer in the settlement context—even if those terms impose additional burdens on the offeree—should not be unduly restricted.[6]

    I am authorized to state Chief Judge Rickman joins this concurrence.

---

[6] *See State Farm Fire & Cas. Co. v. Morgan*, 258 Ga. 276, 276 (368 SE2d 509) (1988) ("Public policy does not prevent a party from assuming by contract duties more burdensome than those imposed by law because of a party's right to refuse the contract.").